# Exhibit B
## Circuit Court Pleadings

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

JOSEPH W. ADAMS,

    Plaintiff,

v.                                        CIVIL ACTION NO. 15-C-169-2

BANK OF AMERICA, N.A., and
SELECT PORTFOLIO SERVICING, INC.,
successor in interest to FAIRBANKS CAPITAL
CORP.,

    Defendants.

## COMPLAINT

### INTRODUCTION

This is an action arising out of a mortgage loan servicing abuse in which the mortgage servicers assessed and charged Plaintiff numerous illegal fees and charges despite a court order prohibiting such conduct. Defendants Bank of America, N.A. and Select Portfolio Servicing, Inc. have illegally charged Plaintiff for attorneys' fees, returned payments to Plaintiff rather than credit his account, misapplied payments in his account, misrepresented amounts due, assessed illegal default fees, pursued foreclosure, and failed to provide an adequate response to a request for an account statement. Plaintiff brings this action to save his home and for other appropriate relief.

### PARTIES

1.    Plaintiff:    Joseph W. Adams works as a forklift operator. Mr. Adams is unsophisticated in financial matters and resides with his wife in the subject property located at 151 Chimney Drive, Bunker Hill, WV 25413.

2.    Current servicer:    (a)    Defendant Select Portfolio Servicing, Inc. (SPS) is the current servicer of Plaintiff's primary mortgage loan. SPS does business in Harrison County, West

Virginia, and its principal address is 3815 S. West Temple, Salt Lake City, UT 84115.

(b) SPS is the successor corporation to Fairbanks Capital Corporation, whose principal address is 3815 S. West Temple, Salt Lake City, UT 84115.

(c) Pursuant to the injunction entered against Fairbanks Capital Corporation and SPS in *Lucas v. Fairbanks Capital Corp.*, Civ. Action No. 03-C-2 (Cir. Ct. Lincoln Cty., W. Va. Jan. 29, 2004) (the Injunction), Fairbanks Capital Corporation and SPS were permanently restrained and enjoined, in part, from failing to credit payments; misrepresenting the amount owed; attempting to collect on default fees, late fees, attorneys' fees, or broker's price opinions; and pursuing foreclosure, among others.

3. <u>Former servicer/Current holder:</u>   Defendant Bank of America, N.A. (BANA) is the holder of Plaintiff's loan, is a national bank doing business in Harrison County, West Virginia with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina 28202. In addition, BANA serviced the loan from June 1999 to April 2002.

## STATEMENT OF FACTS

### Origination

4. On June 21, 1999, Plaintiff purchased a home at 151 Chimney Dr., Bunker Hill, WV 25413.

5. (a) Plaintiff executed a Deed of Trust securing a mortgage loan for the principal sum of $103,200 with an interest rate at 10.4%.

(b) The monthly payments were $936.30.

6. On June 23, 1999, EquiFirst assigned the loan to EFC Holdings Corporation. On the same day, EFC Holdings Corporation assigned the loan to EquiCredit Corporation of America, now

2

BANA.

**Illegal Servicing Abuses**

7.  On July 28, 2000, BANA returned Plaintiff's payment of $1,900.00.

8.  In letter correspondence dated May 9, 2000, BANA represented that Plaintiff was 4 months behind. This was false.

9.  In letter correspondence dated May 9, 2000, BANA returned Plaintiff's payment of $940.00 for a check it received on April 19, 2000.

10. (a) In letter correspondence dated May 30, 2000, Plaintiff received a right to cure.

    (b) BANA represented that Plaintiff had to pay $5,031.50 to reinstate, despite Plaintiff having made his payments.

    (c) BANA also threatened that Plaintiff was responsible for attorneys' fees beyond the amount to cure.

11. In letter correspondence dated July 28, 2000, BANA returned Plaintiff's payment of $1900.00.

12. In letter correspondence dated October 31, 2000, BANA represented that it had been holding $7,552.60 in suspense and that it finally applied this amount to the account starting with the January 21, 2000, due date throughout the August 21, 2000 due date.

13. In March 2002, BANA assigned the loan for servicing to Fairbanks Capital Corporation, predecessor to Select Portfolio Servicing.

14. In letter correspondence dated November 12, 2003, SPS returned Plaintiff's check in the amount of $1,000.00.

15. On December 16, 2004, SPS stated that it was providing a credit of $15.00 to

Plaintiff's account. Upon information and belief, said amount was not posted.

16. In or around September 7, 2005, SPS assessed attorneys' fees to Plaintiff's account for $125.00.

17. By letter dated May 2, 2006, SPS returned Plaintiff's payment.

18. By letter dated July 25, 2006, SPS returned Plaintiff's payment of $2,000.00.

19. A few weeks later, on August 17, 2006, SPS returned Plaintiff's payment of $4,000.00.

20. On September 13, 2006, Plaintiff entered in a forbearance agreement that mandated a $10,000.00 down payment and then payments in the amount of $1,710.93.

21. Then, in or around October 3, 2006, SPS again assessed attorneys' fees to Plaintiff's account of $550.00 and other fees of $786.41.

22. By letter dated October 27, 2006, SPS stated that the monthly payment was to be $936.30. This contradicted the agreement entered in September 2006, and it confused Plaintiff.

23. (a) By letter dated August 16, 2007, SPS stated that it had purchased insurance and Plaintiff's failure to pay the escrow would subject him to foreclosure.

(b) In addition, the same letter stated that Plaintiff was responsible for attorneys' fees. Said representations are illegal.

24. In letter dated May 30, 2008, SPS stated that the balances on Plaintiff's account included property inspection fees and attorneys' fees and costs. Said representations are illegal.

25. (a) In telephone calls in January or February 2009, Plaintiff attempted to make a payment of $936.30, but SPS, without authorization, on February 23, 2009, withdrew $2,808.90 from Plaintiff's banking account.

(b)   As a result, Plaintiff incurred fees from his bank for overdrafting his account.

(c)   SPS failed to return the money.

26.   On August 4, 2010, Plaintiff's wife contacted SPS, and spoke to customer representative Ellie, requesting assistance. Rather than provide assistance, SPS stated that Plaintiff should sell his home.

27.   By letter dated April 8, 2011, SPS provided a reinstatement quote that "reflects attorney fees and costs which have been incurred through this date and an estimate of future attorney fees and costs for continuing legal work." Said representation is illegal.

28.   On October 4, 2013, SPS assessed expenses of $365.00 and attorneys' fees of $240.00.

29.   (a)   In letter correspondence dated, October 24, 2013, SPS's foreclosure firm, Teays Valley Trustees, LLC, represented to Plaintiff that his amount due was $114,251.16.

(b)   In another letter dated that same day, SPS's foreclosure firm, Teays Valley Trustees, LLC, represented to Plaintiff that his amount due was $117,966.59.

30.   On November 29, 2013, SPS assessed expenses of $52.56.

31.   On October 1, 2014, SPS assessed expenses of $21.52 and attorneys' fees of $300.00.

32.   On October 20, 2014, SPS assessed expenses of $404.46.

**Illegal Fees**

33.   (a)   Throughout the life of the loan and indicated on each respective monthly statement, SPS has charged "other fees" and "expenses paid by servicer."

(b)   By statement dated November 5, 2014, SPS states that "other fees" amounts to $3,934.59.

5

  (c) By statement dated November 5, 2014, SPS states that "expenses paid by servicer" amount to $778.57.

  (d) Said amount is excessive and illegal.

34. Despite having contact and making payments throughout the life of the loan, Defendant SPS routinely charged Plaintiff for property inspections, including, but not limited to the following dates:

  (a) April 10, 2002

  (b) June 22, 2004

  (c) August 4, 2004

  (d) October 27, 2004

  (e) March 30, 2005

  (f) April 25, 2005

  (g) June 14, 2005

  (h) July 27, 2005

  (i) March 27, 2006

  (j) April 28, 2008

  (k) June 11, 2008

  (l) July 23, 2008

  (m) September 4, 2008

  (n) October 29, 2008

  (o) March 16, 2009

  (p) April 30, 2009

(q)   June 8, 2009

(r)   July 23, 2009

(s)   September 3, 2009

(t)   October 13, 2009

(u)   December 28, 2009

(v)   February 4, 2010

(w)   April 22, 2010

(x)   June 14, 2010

(y)   August 9, 2010

(z)   October 6, 2010

(aa)  December 2, 2010

(bb)  January 24, 2011

(cc)  March 11, 2011

(dd)  April 27, 2011

(ee)  June 7, 2011

(ff)  July 21, 2011

(gg)  September 22, 2011

(hh)  November 7, 2011

(ii)  December 20, 2011

(jj)  February 8, 2012

(kk)  March 16, 2012

(ll)  March 22, 2012

(mm) May 8, 2012

(nn) June 29, 2012

(oo) August 20, 2012

(pp) August 21, 2012

(qq) October 30, 2012

(rr) November 2, 2012

(ss) December 6, 2012

(tt) February 13, 2013

(uu) April 1, 2013

(vv) June 7, 2013

(ww) July 5, 2013

(xx) August 13, 2013

(yy) October 7, 2013

(zz) December 5, 2013

(aaa) December 19, 2013

(bbb) January 17, 2014

(ccc) March 6, 2014

(ddd) August 27, 2014

(eee) September 10, 2014

(fff) September 10, 2014

(ggg) September 12, 2014

(hhh) September 12, 2014

8

   (iii) September 16, 2014 and

   (jjj) October 24, 2014.

35. Furthermore, Defendant SPS also assessed broker price opinions throughout the life of the loan, including, but not limited to the following dates:

   (a) May 18, 2004

   (b) December 1, 2004

   (c) June 21, 2005 for $300.00

   (d) December 28, 2005 for $150.00

   (e) July 20, 2006 for $175.00

   (f) May 2, 2008

   (g) October 29, 2008

   (h) June 17, 2009

   (i) June 30, 2009

   (j) July 8, 2009

   (k) January 4, 2010

   (l) August 30, 2010

   (m) September 8, 2011

   (n) March 16, 2012

   (o) November 2, 2012

   (p) June 7, 2013

   (q) December 19, 2013 and

   (r) August 27, 2014.

### Failing to Provide the Account Record Request

36. (a) On or about October 28, 2014, Plaintiff requested a detailed account record from SPS.

    (b) Plaintiff sought a complete account history, a copy of the HUD-1 settlement statement and all pre-closing loan disclosures; all assignments and endorsements transferring ownership of the loan; all appraisals or valuations of the home; loan modification or loss mitigation applications and SPS's responses; notices and letters about foreclosure, default, collections, loss mitigation, or Plaintiff's failure to satisfy any loan term; records about any calls to or conversations with Plaintiff; all letters regarding the transfer of the servicing of Plaintiff's loan; the name, address and contact information of the holder of this loan; any contracts that have been signed by Plaintiff, all escrow analyses that have been done on Plaintiff's loan; receipts for payment of insurance; and any correspondence related to insurance and taxes on Plaintiff's home

    (c) SPS failed to provide an adequate response.

    (d) SPS only provided the name of the owner of the account. SPS did not provide the address or contact information of the holder.

    (e) SPS also only provided a partial payment history.

37. To date, SPS continues to collect on the loan.

### Damages

38. Plaintiff has suffered worry and stress, annoyance and inconvenience, and fear of loss of his home.

10

## CLAIMS FOR RELIEF

### COUNT I – ILLEGAL FEES

39. Plaintiff incorporates the preceding paragraphs by reference.

40. Defendants, in the course of attempting to collect on alleged claims from Plaintiff, routinely assessed illegal charges that are not authorized by agreement or law, in violation of sections 46A-2-115, -127(d), and -128(c) of the West Virginia Code.

41. Defendants misrepresented and attempted to collect attorney fees in violation of section 46A-2-127(g) of the West Virginia Code.

42. Defendants threatened to add fees and charges in violation of section 46A-2-127(g) & -124(f) of the West Virginia Code.

43. Defendants' attempts to collect, misrepresentations, and threats are in contravention with the Injunction.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

    (a) The Court enjoin the illegal practices;

    (b) Civil penalties of $4,725 for each violation pursuant to sections 46A-5-101(1) & -106 of the West Virginia Code;

    (c) Actual damages;

    (d) Reasonable attorneys' fees and the costs of this litigation; and

    (e) Such other relief as the Court may deem reasonable and just.

### COUNT II - ILLEGAL REFUSAL TO CREDIT PAYMENTS

44. Plaintiff incorporates the preceding paragraphs by reference.

45. During the life of the loan, Defendants failed to credit payments to Plaintiff's account

11

in violation of section 46A-2-115 of the West Virginia Code.

46. By refusing to apply Plaintiff's payments, thereby increasing his indebtedness, Defendants used an unfair means to collect in violation of section 46A-2-128 of the West Virginia Code.

47. Defendants' failure to credit payments are in contravention with the Injunction.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) The Court enjoin the illegal practices;

(b) Civil penalties of $4,725 for each violation pursuant to sections 46A-5-101(1) & -106 of the West Virginia Code;

(c) Actual damages;

(d) Reasonable attorneys' fees and the costs of this litigation; and

(e) Such other relief as the Court may deem reasonable and just.

### COUNT III – REFUSAL TO PROVIDE ACCOUNT HISTORY (SPS)

48. Plaintiff incorporates the preceding paragraphs by reference.

49. Defendant SPS failed and refused to provide a full account history to Plaintiff in violation of section 46A-2-114(2) of the West Virginia Code.

50. Defendants' failure to provide the full account history are in contravention to the Injunction.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) The Court enjoin the illegal practices;

(b) Civil penalties of $4,725 for each violation pursuant to sections 46A-5-101(1) & -106 of the West Virginia Code;

  (c) Actual damages;

  (d) Reasonable attorneys' fees and the costs of this litigation; and

  (e) Such other relief as the Court may deem reasonable and just.

### COUNT IV - FAILURE TO IDENTIFY HOLDER (SPS)

51. Plaintiff incorporates the preceding paragraphs by reference.

52. Upon written request of Plaintiff, Defendant failed to clearly disclose the name and full business address of the holder of the loan, while collecting on a debt, in violation of section 46A-2-127(c) of the West Virginia Code.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

  (a) The Court enjoin the illegal practices;

  (b) Civil penalties of $4,725 for each violation pursuant to sections 46A-5-101(1) & -106 of the West Virginia Code;

  (c) Actual damages;

  (d) Reasonable attorneys' fees and the costs of this litigation; and

  (e) Such other relief as the Court may deem reasonable and just.

### COUNT V – UNCONSCIONABLE/UNFAIR MEANS TO COLLECT (SPS)

53. Plaintiff incorporates the preceding paragraphs by reference.

54. Defendant SPS failed and refused to provide a statement of default charges to Plaintiff in violation of section 46A-2-115(d) of the West Virginia Code.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

  (a) The Court enjoin the illegal practices;

  (b) Civil penalties of $4,725 for each violation pursuant to sections 46A-5-101(1)

13

& -106 of the West Virginia Code;

 (c) Actual damages;

 (d) Reasonable attorneys' fees and the costs of this litigation; and

 (e) Such other relief as the Court may deem reasonable and just.

## COUNT VI- CONVERSION (SPS)

55. Plaintiff incorporates the preceding paragraphs by reference.

56. Plaintiff had an ownership interest in the funds in his bank account.

57. Defendant, by wrongfully debiting Plaintiff's bank account without authorization and by failing to return the money, Defendant SPS intentionally and illegally converted proceeds intended to benefit Plaintiff.

58. Plaintiff was damaged as a proximate result of the Defendant's unlawful conversion.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

 (a) Actual and punitive damages;

 (b) Reasonable attorney's fees and the cost of this litigation; and

 (c) Such other relief as this Court deems equitable and just.

## COUNT VII- BREACH OF CONTRACT

59. Defendants and Plaintiff are parties to loan contracts, namely the Note and Deed of Trust, which limits each party's rights and responsibilities.

60. (a) The Deed of Trust, entered into on or about June 21, 1999, provides that all payments paid by Plaintiff to Defendants should be applied to prepayment charges, amounts payable for taxes and insurance, to interest due, and to principal due, and to any late charges. (See Deed of Trust ¶ 3).

(b) Defendants breached this provision of the parties' agreement by failing to apply Plaintiff's payments to his account.

61. (a) The Deed of Trust and the Note, entered into on or about June 21, 1999, states that loan charges will be limited to the maximum set by law. (See Deed of Trust ¶ 13, Note ¶ 5).

(b) Defendants breached this provision of the parties' agreement by charging Plaintiff fees and charges that are not authorized by the agreement or the law, and in excess of the law.

62. (a) The Deed of Trust provides that any provision for Plaintiff to pay attorneys' fee is void. (See Deed of Trust ¶ 25).

(b) Defendants breached this provision of the parties' agreement by charging Plaintiff attorneys's fees.

63. Defendants have a duty of good faith and fair dealing implied in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefit of their contract.

64. Defendants breached its duties under the contract by:

(a) refusing Plaintiff's payments to his account;

(b) adding unreasonable and unauthorized fees to his account; and

(c) charging attorneys' fees.

65. Defendants' breach of its contractual duties was intentional, wanton, and/or reckless.

66. Plaintiff was damaged as a proximate result of Defendants' breaches of its contractual duties.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Actual damages;

(b) Appropriate equitable relief providing an affordable modification as promised;

(c) Reasonable attorneys' fees and the costs of this litigation; and

(d) Such other relief as the Court deems equitable and just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

JOSEPH W. ADAMS,
**Plaintiff, by Counsel:**

_____
Michael C. Nissim-Sabat (WV Bar No. 12233)
Jennifer S. Wagner (WV Bar No. 10639)
Mountain State Justice, Inc.
321 West Main St., Suite 401
Clarksburg, WV 26301
(304) 326-0188
(304) 326-0189 (fax)
**COUNSEL FOR PLAINTIFF**