# Exhibit D
## Unpublished Cases

◆ Positive
As of: May 19, 2015 9:24 AM EDT

# *Allman v. Chancellor Health Partners, Inc.*

United States District Court for the Northern District of West Virginia

March 2, 2009, Decided; March 2, 2009, Filed

Civil Action No. 5:08CV155

**Reporter**
2009 U.S. Dist. LEXIS 57022; 2009 WL 514086

CAROL J. ALLMAN and MICHAEL ALLMAN, Plaintiffs, v. CHANCELLOR HEALTH PARTNERS, INC. and WEIRTON HEALTH PARTNERS, INC., Defendants.

**Subsequent History:** Motion denied by, Motion denied by, As moot, Summary judgment denied by, As moot *Allman v. Chancellor Health Partners, Inc., 2009 U.S. Dist. LEXIS 44501 (N.D. W. Va., May 26, 2009)*

## Core Terms

amount in controversy, damages, jurisdictional, plaintiffs', exceeds, removal, costs

**Counsel:** [*1] For Carol J. Allman, Michael Allman, Plaintiffs: Nicholas A. Wininsky, LEAD ATTORNEY, Wininsky Law Offices, Pittsburgh, PA; William Cipriani, LEAD ATTORNEY, Cipriani Law Offices, LC, Wellsburg, WV.

For Chancellor Health Partners, Inc., Weirton Health Partners, LLC, Defendants: Martin J. Saunders, LEAD ATTORNEY, Denise R. Brossman, Jackson Lewis, LLP, Pittsburgh, PA; Sunshine Fellows, LEAD ATTORNEY, PRO HAC VICE, Jackson Lewis LLP, Pittsburgh, PA.

**Judges:** FREDERICK P. STAMP, JR., UNITED STATES DISTRICT JUDGE.

**Opinion by:** FREDERICK P. STAMP, JR.

## Opinion

### *MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND*

#### I. *Background*

Plaintiff Carol Allman and her husband, plaintiff Michael Allman, filed suit in the Circuit Court of Brooke County, West Virginia, against defendants Chancellor Health Partners, Inc. and Weirton Health Partners, Inc. Carol Allman is a registered nurse who worked for the defendants at their assisted living facility in Weirton, West Virginia from on or about June 1, 2007 until on or about April 2, 2008, when she was terminated from her position. In the complaint, Carol Allman alleges retaliatory discharge, detrimental reliance, defamation, and intentional infliction of emotional distress/tort [*2] of outrage, and Michael Allman alleges loss of his wife's consortium. The defendants removed the action to this Court on the basis of diversity jurisdiction. The plaintiffs filed a motion to remand, to which the defendants responded in opposition. The defendants also filed a supplemental notice of removal, to which the plaintiffs filed no response or objection. The plaintiffs also filed no reply to the defendants' response regarding the plaintiffs' motion to remand.

At this stage of the proceedings, the parties do not dispute that complete diversity of citizenship exists between the parties. Thus, the only disputed issue relating to the motion to remand is whether the amount in controversy exceeds $ 75,000.00, exclusive of interests and costs. As discussed below, this Court concludes that the amount in controversy meets the jurisdictional threshold. Consequently, the plaintiffs' motion to remand must be denied.

#### II. *Applicable Law*

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. *28 U.S.C. § 1441*. A federal district court has original jurisdiction over cases between citizens of [*3] different states where the amount in controversy exceeds $ 75,000.00, exclusive of interests and costs. *28 U.S.C. § 1332(a)*.

The burden of establishing that the amount in controversy exceeds $ 75,000.00, exclusive of interest

2009 U.S. Dist. LEXIS 57022, *4

and costs, rests with the party seeking removal. *Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).* This Court has consistently applied the "preponderance of evidence" standard to determine whether a defendant has met its burden of proving the amount in controversy. This burden of proof requires the defendant to produce evidence that establishes that the actual amount in controversy exceeds $ 75,000.00. *See De Aguilar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995),* cert. denied, *516 U.S. 865, 116 S. Ct. 180, 133 L. Ed. 2d 119 (1995).* Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. *See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).*

Although courts strictly construe the statute granting removal jurisdiction, *see Doe v. Allied Signal, Inc., 95 F.2d 908, 911 (7th Cir. 1993),* the court is not required "to leave common sense behind" when determining the amount in controversy.  [*4] *Mullins v. Harry's Mobile Homes, 861 F. Supp. 22, 24 (S.D. W. Va. 1994).* When no specific amount of damages is set forth in the complaint, the Court may consider the entire record before it and may conduct its own independent inquiry to determine whether the amount in controversy satisfies the jurisdictional minimum. *Mullins v. Harry's Mobile Homes, Inc., 861 F. Supp. 22, 23 (S.D. W. Va. 1994).* However, the court is limited to examining only evidence that was available at the moment the petition for removal was filed. *See Chase v. Shop 'N Save, 110 F.3d 424, 428 (7th Cir. 1997).*

III. *Discussion*

The plaintiffs argue that the amount of damages they seek is purely speculative at this juncture, especially because Carol Allman has a duty to mitigate her economic losses, which could mean that the economic damages are nominal. Therefore, the plaintiffs contend, the jurisdictional amount in controversy has not been established.

By contrast, the defendants contend that potential damages arising out of the plaintiffs' claim for retaliatory discharge alone exceeds the jurisdictional minimum. In addition to the compensatory damages for lost wages and benefits sought by Carol Allman for her retaliatory  [*5] discharge claim, this Court must also consider the other damages which the plaintiffs may recover if they prevail on their other claims, including any punitive damages which may be awarded. For these reasons,

the defendants argue, they have established the jurisdictional minimum.

This Court finds that the defendants have shown by a preponderance of evidence that the amount in controversy meets the jurisdictional requirements. "The starting point for ascertaining the amount in controversy when the petition for removal was filed is . . . the complaint itself." *Sayre v. Potts, 32 F. Supp. 2d 881, 887 (S.D. W. Va. 1999).* Courts must also consider punitive damages, where available under the cause or causes of action brought, when determining the jurisdictional amount. *Mullins v. Harry's Mobile Homes, Inc., 861 F.Supp. 22, 24 (S.D. W. Va. 1994).* Here, although the plaintiffs have not requested a specific amount of damages in their complaint, based on the allegations therein, the plaintiffs appear at the very least to be seeking past and future lost wages, loss of benefits, and damages for emotional distress.

With an annual salary level of approximately $ 61,000.00, the opportunity to earn  [*6] $ 4,000.00 in annual bonuses, and annual benefits valued at approximately $ 14,750.00, the amount of plaintiffs' claim for lost wages and benefits alone exceeds $ 75,000.00. (*See* Conley Aff.) Additionally, any damages necessary to remedy the emotional distress allegedly suffered by Carol Allman and the loss of consortium allegedly suffered by Michael Allman will certainly raise the amount in controversy above the requisite threshold. Therefore, the defendants have demonstrated by a preponderance of the evidence that the plaintiffs' claim is greater than $ 75,000.00, exclusive of interests and costs.

IV. *Conclusion*

For the reasons stated above, this Court concludes that the amount in controversy exceeds $ 75,000.00, exclusive of interests and costs. Accordingly, the plaintiffs' motion to remand is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: March 2, 2009

/s/ Frederick P. Stamp, Jr.

FREDERICK P. STAMP, JR.

2009 U.S. Dist. LEXIS 57022, *6

UNITED STATES DISTRICT JUDGE

**❶** Cited
As of: May 19, 2015 9:16 AM EDT

# *Hardig v. Certainteed Corp.*

United States District Court for the Western District of North Carolina, Charlotte Division

February 9, 2012, Decided; February 9, 2012, Filed

3:11CV535

**Reporter**
2012 U.S. Dist. LEXIS 15852; 2012 WL 423512

STEVE and KARYN HARDIG, et al., Individually and on behalf of all others similarly situated, Plaintiffs, CERTAINTEED CORPORATION, CENTEX REAL ESTATE CORPORATION, CENTEX HOMES, and NOMAS CORP., Defendants.

## Core Terms

amount in controversy, removal, siding, jurisdictional, Plaintiffs', treble damages

**Counsel:** [*1] For Steve Hardig, Plaintiff: Daniel Kent Bryson, Matthew Earl Lee, Scott Crissman Harris, LEAD ATTORNEYS, Whitfield, Bryson & Mason, LLP, Raleigh, NC.

For Karyn Hardig, Salvatore Bongiorno, Brooke Bongiorno, William Brantly, Tina Brantly, Kirby Dean, Jennifer Dean, Evan Epp, Monica Epp, Christopher Everetts, Kelly Everetts, Mary Kathleen Harrison, Jim MacMonagle, Karen MacMonagle, Stephen McNally, Laura McNally, Thomas Aiosa, Cassandra Aiosa, Plaintiffs: Matthew Earl Lee, Scott Crissman Harris, LEAD ATTORNEYS, Whitfield, Bryson & Mason, LLP, Raleigh, NC.

For CertainTeed Corporation, Defendant: John E. Grupp, LEAD ATTORNEY, Parker Poe Adams & Bernstein L.L.P., Charlotte, NC.

For Centex Real Estate Corporation, Centex Homes, Nomas Corp., Defendants: Tracy L. Eggleston, LEAD ATTORNEY, Cozen & O'Conner, Charlotte, NC.

**Judges:** Graham C. Mullen, United States District Judge.

**Opinion by:** Graham C. Mullen

## Opinion

ORDER

This matter is before the court upon Plaintiffs' Motion to Remand, filed November 21, 2011 (dkt. # 9). Defendants have filed a brief in opposition. No reply has been submitted by Plaintiffs.

This putative class action was originally filed in the Superior Court of Union County, North Carolina, alleging breach of [*2] warranty and violations of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUTP"). The lawsuit involves certain fiber cement siding manufactured by Defendant Certainteed and installed on Plaintiffs' homes. Plaintiffs allege that the siding suffers from an inherent defect that results in the siding cracking, chipping, flaking, peeling or splitting. Defendants timely removed this action to this court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), *28 U.S.C. § 1332(d)*. CAFA provides federal jurisdiction over putative class actions in which (i) the proposed class consists of more than 100 members, (ii) any putative class member is a citizen of a State different from any defendant, and (iii) the amount in controversy exceeds $5 million. *28 U.S.C. §§ 1332(d)(2)*, *(d)(5)*. Plaintiffs have moved to remand, arguing that this court does not have subject matter jurisdiction because Certainteed has failed to establish that this action meets CAFA's jurisdictional threshold of more than $5 million in controversy.

The removing defendant bears the burden of proving the requisite jurisdictional amount by only a preponderance of the evidence. *See Anthony v. Serv. Corp. Int'l., No. 10-642, 2011 U.S. Dist. LEXIS 38734, at *7 (W.D.N.C. Mar. 18, 2011)*. [*3] In determining whether the amount in controversy exceeds the $5 million jurisdictional threshold, the appropriate measure is not the amount of damages Plaintiffs will ultimately recover,

but rather the alleged amount in controversy. *Lanier v. Norfolk Southern Corp., 256 Fed. Appx. 629, 631-32 (4th Cir. 2007)* (citing *Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005))*. If the removing defendant meets its burden of establishing the amount in controversy, "only a 'legal certainty' that the judgment will be less forecloses jurisdiction." *Id.* (affirming denial of motion to remand when plaintiffs failed to show to a legal certainty that the judgment would be less than $5 million).

In its Notice of Removal, Certainteed submitted the Declaration of Don Cole, a Consumer Service Warranty Manager for Certainteed, who stated that the retail cost of the siding for an average single-family home is $3000 to $4000, which Plaintiffs do not dispute. This amount is exclusive of labor. Plaintiffs' Complaint alleges that they are suing "on behalf of all persons and entities who own homes, residences or other structures physically located in North Carolina, on which [Defendants] or one of  [*4] their related entities or subcontractors installed Certainteed WeatherBoards Fiber Cement exterior siding." (Compl. ¶ 1). In paragraph 49 of the Complaint, Plaintiffs allege that "[t]he Class is composed of thousands of persons geographically dispersed throughout Indian Trail, North Carolina as well as the state of North Carolina, the joinder of whom in one action is impractical." (Compl. ¶ 49). Yet in paragraph 47, Plaintiffs define the Class as "All persons in Indian Trail, North Carolina and/or the Fieldstone Farms subdivision who own a home which was constructed by Centex with the Siding." (Compl. ¶ 47). In their brief in support of remand, the Plaintiffs are now contending that only 501 homes fall within the putative class. The amount in controversy is determined by the allegations in the Complaint at the time of removal. *See Brooks v. GAF Materials Corp., 532 F.Supp. 2d 779, 781 (D.S.C. 2008)* ("In determining the amount in controversy for federal diversity jurisdiction, the court must examine the complaint at the time of removal. . . .[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal."). When plaintiffs purport to represent  [*5] a class of a specific size, this number should be used when calculating the amount in controversy for jurisdictional purposes. *See Strawn v. AT&T Mobility, LLC, 530 F.3d 293, 298 (4th Cir. 2008)* (refusing to use plaintiffs' "post hoc characterization" of its class for amount in controversy purposes); *Martin v. State Farm Mut. Auto. Ins. Co., No. 10-144, 2010 U.S.Dist. LEXIS 84903, at *15 (S.D.W. Va. Aug. 18, 2010)*. The court must construe Plaintiffs' Complaint as drafted, and finds that the class could potentially consist

of thousands throughout North Carolina. Plaintiffs may not now redefine their class in an attempt to avoid federal jurisdiction.

Even if Plaintiffs had alleged the class to be restricted to only 501 homeowners, the jurisdictional threshold would still be met. Plaintiffs have asserted a claim for treble damages under the NCUTP. In analyzing the amount in controversy for cases removed under CAFA, treble damages, when demanded, must be included in the analysis. *Frederico v. Home Depot, 507 F.3d 188, 195 (3rd Cir. 2007)*; *Lawton v. Basic Research, L.L.C., No. 10-6341, 2011 U.S. Dist. LEXIS 36169, at *14 (D.N.J. Apr. 4, 2011)* (analyzing amount in controversy using treble  [*6] damages provided under New Jersey Consumer Fraud Act); *Shubert v. Manheim Auctions, Inc., No. 09-3365, 2010 U.S. Dist. LEXIS 15875, at *19 (E.D. Pa. Feb. 18, 2010)* (including treble damages available under Pennsylvania law in amount in controversy analysis); *Hargis v. Access Capital Funding LLC, No. 09-604, 2009 U.S. Dist. LEXIS 75994, at *5 (E.D. Mo. Aug. 26, 2009)* (including treble damages in amount in controversy calculation).

As provided in the Notice of Removal, the cost of replacement siding for a single family home could be as high as $4,000. This $4,000 figure should be used in calculating the amount in controversy as it represents the "maximum value that this action could possibly represent to each putative class member" for replacement costs. *See Lee-Bolton v. Koppers Inc., No. 10-253, 2011 U.S. Dist. LEXIS 103048, at *33 (N.D. Fla. June 6, 2011)* (measuring amount in controversy by full value of all pieces of property owned by class members as full value represented potential damages). When the $4,000 figure is trebled, each claimant could receive damages in the amount of $12,000. A class size of 501 members still results in an amount in controversy exceeding $6 million considering  [*7] replacement costs alone. Since Plaintiffs also seek damages for the cost of removing and replacing the Siding, which is significant in and of itself, the amount in controversy is easily met.

The court finds that Defendants have met their burden of establishing the requisite jurisdictional amount, and the motion to remand this case is denied.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand is hereby DENIED.

Signed: February 9, 2012

/s/ Graham C. Mullen

2012 U.S. Dist. LEXIS 15852, *7

Graham C. Mullen
United States District Judge

**A** Neutral

As of: May 19, 2015 9:13 AM EDT

# *Hill v. Equifax Info. Servs. LLC*

United States District Court for the Middle District of North Carolina

May 3, 2011, Decided; May 3, 2011, Filed

1:11CV107

**Reporter**

2011 U.S. Dist. LEXIS 47488; 2011 WL 1675045

ARTHUR HILL, Plaintiff, v. EQUIFAX INFORMATION SERVICES LLC, Defendant.

**Subsequent History:** Motion denied by *Hill v. Equifax Info. Servs., LLC, 2013 U.S. Dist. LEXIS 16647 (M.D.N.C., Feb. 7, 2013)*
Motion granted by, Summary judgment granted by, Dismissed by *Hill v. Equifax Info. Servs., LLC, 2013 U.S. Dist. LEXIS 136160 (M.D.N.C., Sept. 24, 2013)*
Motion to strike denied by, Motion granted by, Claim dismissed by *Hill v. Equifax Info. Servs., LLC, 2013 U.S. Dist. LEXIS 170104 (M.D.N.C., Dec. 3, 2013)*

## Core Terms

removal, notice, copy of the summons

**Counsel:**  [*1] ARTHUR HILL, Plaintiff, Pro se, CONCORD, NC.

For EQUIFAX INFORMATION SERVICES LLC, Defendant: DAVID GLEN GUIDRY, KEASHA ANN BROUSSARD, LEAD ATTORNEYS, KING & SPALDING LLP, CHARLOTTE, NC.

**Judges:** P. Trevor Sharp, United States Magistrate Judge.

**Opinion by:** P. Trevor Sharp

## Opinion

### ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on pending motions filed by the parties, including (1) Plaintiff's motion for

sanctions (Docket No. 6), (2) Plaintiff's motion to strike (Docket No. 7), (3) Plaintiff's motion to remand (Docket No. 8), and (4) Plaintiff's amended motion to remand (Docket No. 14). Plaintiff Arthur Hill, proceeding *pro se*, originally filed this action on December 8, 2010, in the Superior Court for Cabarrus County, alleging violations by Defendant Equifax Information Services LLC, of state and federal laws, including the Fair Credit Reporting Act (FCRA), *15 U.S.C. § 1681, et seq.* Defendant Equifax initially removed the case to this Court on February 9, 2011, stating in its notice of removal that it was served with the Complaint on January 11, 2011. Defendant removed the action based upon federal question subject-matter jurisdiction pursuant to *28 U.S.C. §1331*.

In his  [*2] motion for Rule 11 sanctions (Docket No. 6), filed February 15, 2011, Plaintiff Hill challenges the removal of this action to federal court, and argues that the representation of Defendant Equifax in its Notice of Removal concerning the date of service is false and misleading and thus violates *Rule 11 of the Federal Rules of Civil Procedure*. Plaintiff contends that service documents show that Defendant was served with the Complaint on January 7, not January 11. Plaintiff Hill challenges the timeliness of the notice of removal, contending that Defendant was served with the Complaint more than 30 days before the initial notice of removal was filed. Plaintiff appears also to argue that removal was improper because the Fair Credit Reporting Act allows a plaintiff to bring an action in federal court or in "any other court of competent jurisdiction," and Plaintiff Hill made an election for state court by filing this action in the Cabarrus County Superior Court.[1]

Plaintiff's Motion to Strike (Docket No. 7), filed  [*3] February 16, is directed toward his own motion to

---

[1]  This argument is frivolous. The fact that state and federal courts have concurrent jurisdiction under the FCRA does not limit a defendant's right of removal under *28 U.S.C. § 1446*.

remand, Docket No. 6. Plaintiff acknowledges that he failed to comply with the safe harbor provisions of *Rule 11(c)(2)*, and thus his motion should be stricken. For good cause shown, the Motion to Strike (Docket No. 7) is **GRANTED,** and Plaintiff's motion for Rule 11 sanctions, appearing at Docket No. 6, is **STRICKEN** and requires no further action by the parties or the Court.

Remaining before the Court are Plaintiff's Motion to Remand (Docket No. 8), filed February 16, and Plaintiff's Amended Motion to Remand (Docket No. 14), filed March 8. Defendant filed an Answer to the original Complaint in this action on February 16[2] (Docket No. 9) and also filed an "Amended Notice of Removal" on March 2 (Docket No. 12).

Plaintiff's motion to remand (Docket No. 8) is based upon a renewed argument that Defendant's notice of removal was filed in this Court outside the 30 day period permitted for removal by *28 U.S.C. § 1446(b)*. Plaintiff also argues that he intends to join an additional party to this action, a North Carolina business, and that joinder will destroy diversity in **[*4]** this action and thus deprive the Court of subject-matter jurisdiction. As noted, Defendant Equifax, on March 2, filed an "Amended Petition for Removal." (Docket No. 12.) Therein, Defendant amends its original removal notice. The original notice states that "Defendant Equifax was served with the Complaint in this action on January 11, 2011." (Docket No. 1, ¶ 2.) In the Amended Petition, Equifax states that it received a copy of the Complaint (only) on January 7, 2011, but was not served with a copy of the summons at that time as is required by the North Carolina Rule of Civil Procedure 4(j). Defendant additionally states that Plaintiff has filed an Amended Complaint in state court, and that the Amended Complaint, with summons, was properly served upon Equifax on February 18.

In response to the amended petition for removal, Plaintiff Hill filed an "Amended Motion to Remand." He contends that, in light of Defendant's amended petition, it is now undisputed that Defendant was in receipt of a copy on the initial pleading (the Complaint) setting forth his claims on January 7, but did not remove the action until February 9, outside the 30-day period for

removal. Defendant Equifax has **[*5]** responded in opposition to the amended motion to remand.

Plaintiff proceeds *pro se* in this action. The Court notes that the question of the timeliness of the removal of an action turns upon the formalities of service of process, a matter that is often complicated and outside the common experience of *pro se* litigants. Here, the record is undisputed that Plaintiff attempted service upon Defendant in early January 2011. He sent to the Sheriff of Fulton County, Georgia, only one copy (the original) of the summons along with a copy of the complaint (minus the exhibits). He received in return from the Sheriff the original of the summons, which carried the notation that a copy of the summons and complaint was served upon Defendant on January 7, 2011. Defendant avers, through competent evidence, that it received only a copy of the complaint (minus exhibits) on January 7, and did not receive a copy of the summons. Plaintiff concedes that he failed to provide a service copy of the summons to the Sheriff, and received back the original, thus raising an inference that no copy of the summons was furnished to Defendant as a part of the "service" effected by the Sheriff. Under these circumstances, **[*6]** it is apparent that Defendant's representation that it received no copy of the summons is consistent with Plaintiff's own description of the events. Plaintiff admits in one filing (Docket No. 14, Am. Mot. to Remand, ¶¶ 8-12) that "service of process was not entirely complete." (*Id.,* Ex. A, Decl. of Serv. of Process, ¶ 5.)

North Carolina law provides that the Sheriff's report of service is "prima facie" proof of service, but other evidence may show an insufficiency of service. *Williams v. Burroughs Wellcome Co., 46 N.C. App. 459, 462, 265 S.E.2d 633, 635 (1980)*. The evidence presented by Defendant, *and by Plaintiff himself,* in this case persuades the Court that effective service was not accomplished upon Defendant at any time prior to the service with regard to the Amended Complaint on February 18, 2011.[3]

The failure of service of process with regard to the original complaint is fatal to Plaintiff's argument that Defendant's removal of this action was untimely. In *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 348, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999)*, **[*7]** the United States Supreme Court held that

---

[2]   In its Answer, Equifax preserved a defense of insufficient service of process.

[3]   *Cf. Crabtree v. City of Durham,* 136 N.C. App. 816, 526 S.E.2d 503 (2000) (more than affidavit of Defendant required to overcome prima facie showing in return of service).

2011 U.S. Dist. LEXIS 47488, *7

formal process is required to trigger the temporal deadlines for removal, noting that official service is required, not mere notice. The Court determined that mere receipt of the complaint, unattended by formal service, was insufficient to initiate a defendant's 30-day period for removal of a state action to federal court. *See also Barbour v. Int'l Union, No. 08-1740, 640 F.3d 599, 2011 U.S. App. LEXIS 1695, 2011 WL 242131, at *10* (recognizing that *Murphy Bros.* acknowledged the significance of formal service to the judicial process, particularly in the context of the time limits on removal).

Defendant's Amended Notice of Removal, filed March 2, is clearly timely with regard to the Amended Complaint filed in state court, the Amended Complaint being the only complaint properly served upon Defendant. Plaintiff's other arguments for remand, relating to the destruction of diversity jurisdiction by the potential joinder of other parties, is frivolous. This case was removed based upon federal question jurisdiction, not diversity jurisdiction. Accordingly, Plaintiff's motions to remand (Docket Nos. 8 and 14) are without merit and should be denied.

For reasons set forth above, **IT IS ORDERED  [*8]** that Plaintiff's motion to strike (Docket No. 7) is **GRANTED** and therefore Plaintiff's motion for sanctions (Docket No. 6) is **STRICKEN.** Further, **IT IS RECOMMENDED** that Plaintiff's motions for remand (Docket Nos. 8 and 14) be denied and that Defendant be directed to file a response to the Amended Complaint.

/s/ P. Trevor Sharp

United States Magistrate Judge

Date: May 3, 2011

**ℹ Cited**
As of: May 19, 2015 9:22 AM EDT

# *Jefferson v. Quicken Loans, Inc.*

United States District Court for the Northern District of West Virginia

July 19, 2013, Decided; July 19, 2013, Filed

Civil Action No. 5:13CV59

**Reporter**
2013 U.S. Dist. LEXIS 102038; 2013 WL 3812099

LOURIE JEFFERSON (f/k/a BROWN) and MONIQUE BROWN, Plaintiffs, v. QUICKEN LOANS, INC., Defendant.

## Core Terms

amount in controversy, attorney's fees, civil penalty, estimate, calculation, removal, maximum, reasonable attorney's fees, diversity jurisdiction, maximum penalty, consumer

**Counsel:** [*1] For Lourie Jefferson, formerly known as Brown, Monique Brown, Plaintiffs: James G. Bordas, Jr., Jason E. Causey, LEAD ATTORNEYS, Bordas & Bordas, PLLC, Wheeling, WV.

For Quicken Loans, Inc., Defendant: Carrie Goodwin Fenwick, Joseph M Ward, Victoria L. Wilson, LEAD ATTORNEYS, Goodwin & Goodwin LLP, Charleston, WV.

**Judges:** FREDERICK P. STAMP, JR., UNITED STATES DISTRICT JUDGE.

**Opinion by:** FREDERICK P. STAMP, JR.

## Opinion

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

### I. Background

The plaintiffs filed this action in the Circuit Court of Ohio County, West Virginia against defendant Quicken Loans, Inc. alleging violations of the West Virginia Consumer Credit Protection Act ("WVCCPA"), *W. Va. Code § 46A-1-101 et seq.*, due to several instances of allegedly improper debt collection practices and direct contact with the plaintiffs. On May 1, 2013, the defendant filed a timely notice of removal in this Court, claiming diversity jurisdiction pursuant to *28 U.S.C. §§ 1332(a)* and *1441(a)*.

The defendant supports its claim of diversity jurisdiction by arguing that complete diversity exists [1] and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, by combining the maximum civil [*2] penalties with its estimate for reasonable attorney fees as permitted in consumer protection actions under *West Virginia Code § 46A-5-104*. [2]

The plaintiffs then filed a motion to remand. In this motion, the plaintiffs take issue with both the use of the maximum statutory penalty and the defendant's estimation of reasonable attorney fees in calculation of the amount in controversy. Plaintiffs suggest that because the award of civil penalties is discretionary, the defendant must produce further evidence in order to assert the maximum penalty as an estimate of the amount in controversy. Without such evidence, the plaintiffs argue that the minimum should be used to calculate the amount in controversy. Second, they claim that attorney fees are too speculative, both in award [*3] and in amount, and are given an arbitrary value for these calculations by the defendant.

The defendant filed a brief in response, which gave a more detailed explanation of its calculation of the maximum penalties, and reiterated the defendant's views on reasonable attorney fees by reference to other

---

[1]  It seems to be agreed that complete diversity exists in this case. The plaintiffs are residents of West Virginia and defendant Quicken Loans, Inc. is a Michigan corporation with its principal place of business in Michigan.

[2]  The defendant also mentioned in its notice of removal that actual damages were sought but because these damages were not estimated by either party, they do not help resolve the amount in controversy.

2013 U.S. Dist. LEXIS 102038, *4

consumer protection cases. The plaintiffs' reply brief continued to dispute the defendant's figures and the law relied upon by the defendant. Having reviewed the parties' pleadings and the relevant law, this Court finds that the defendant has failed to meet its burden regarding the amount in controversy. For the following reasons, the plaintiffs' motion to remand must be granted.

## II. Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. *28 U.S.C. § 1441*. A federal district court has original jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs. *28 U.S.C. § 1332(a)*. The party seeking removal bears the burden of establishing federal jurisdiction. See *Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994)*. [*4] Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. *Id.*

## III. Discussion

The defendant used two types of damages, civil penalties and attorney fees, in its notice of removal in an attempt to reach the requisite $75,000.00 amount in controversy for diversity jurisdiction. The defendant proposes calculating the value of potential civil penalties by multiplying the number of statute violations as stipulated by the plaintiffs [3] — twelve — by the maximum civil penalty allowed by the WVCCPA. After adjustment for inflation as provided by the statute, this maximum penalty appears to be nearly $4,600.00. This results in roughly $55,000.00 in civil penalties. With regard to attorney fees, the defendant claims that other WVCCPA cases have found $25,000.00 to be a reasonable amount. Accordingly, the defendant argues that $25,000.00 is an appropriate estimate for reasonable attorney fees in this case.

The plaintiffs in their motion to remand characterize the calculation [*5] of both figures as arbitrary and without support. Further, the plaintiffs argue that the statutory minimum civil penalty should be used, unless the defendant is willing to present evidence of its egregious

behavior which would merit awarding the maximum penalty. Second, the plaintiffs argue that $25,000.00 is a speculative estimate and not consistent with actual case law.

## A. Civil penalties

As a general rule, when there is a maximum penalty by statute, it is appropriate to measure the amount in controversy by the maximum and not by what the plaintiff is likely to win. See *Brill v. Countrywide Home Loans Inc., 427 F.3d 446, 449 (7th Cir. 2005)*; *Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199 (9th Cir. 2008)*. This method of measuring amount in controversy is also the common practice in cases under the West Virginia Consumer Credit Protection Act which have been removed to federal court. See *Knott v. HSBC Card Services Inc., No. 3:10CV82, 2010 U.S. Dist. LEXIS 101013, 2010 WL 35522105 at *4 (N.D. W. Va. Sept. 8, 2010)*; *Maxwell v. Wells Fargo Bank, N.A., No. 2:09-0500, 2009 U.S. Dist. LEXIS 94476, 2009 WL 3293871 (S.D. W. Va. Oct. 9, 2009)*.

As the surrounding case law demonstrates, it is appropriate to use the statutory maximum in estimation [*6] of the amount in controversy. See e.g., *Woodrum v. Mapother & Mapother P.S.C., Inc., No. 2:10-00478, 2010 U.S. Dist. LEXIS 107101, 2010 WL 3943732 at *4 (W. Va. Oct. 5, 2010)*. Because the statutory maximum represents the amount in dispute between the parties, the Court accepts $55,000.00 as an appropriate estimate of the civil penalties portion of the amount in controversy.

## B. Attorney fees

In actions under the WVCCPA, attorney fees may be awarded to the consumer, at the discretion of the judge, for "illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice." *W. Va. Code § 46A-5-104*. Because the plaintiffs in this case can claim attorney fees under a state statute as a substantive right, attorney fees should be considered for the calculation of the amount in controversy. See *McGraw v. Discover Financial Services, Inc., No. Civ.A. 2:050215, 2005 U.S. Dist. LEXIS 37111, 2005 WL 1785259 at *6 (S.D. W. Va. July 26, 2005)*. Under West Virginia law, for certain types of conduct "the court may award all or a portion of the costs of litigation, including

---

[3]   This stipulation was only for the purposes of considering removal jurisdiction, but seems to contradict the fourteen items of correspondence attached to the complaint.

reasonable attorney fees," but is not required to do so. *W. Va. Code § 46A-5-104* (emphasis added). Additionally, the West Virginia Supreme Court of Appeals held in *Vanderbilt [*7] Mortgage and Finance, Inc. v. Cole* that attorney fees are to be awarded consistent with the twelve factors enunciated in *Aetna Cas. & Sur. Co. v. Pitrolo. Cole, 230 W. Va. 505, 740 S.E.2d 562, 572 (W. Va. 2013)* (citing *Aetna, 342 S.E.2d 156, 161-62 (W. Va. 1986))*.

However, the amount of attorney fees presented by the defendant here are speculative for several reasons and are therefore insufficient to make it "more likely than not" that the amount in controversy will exceed $75,000.00. *Id.* at *4. First, as stated above, even if the plaintiffs prove their claims stated in the complaint and the required conduct, the award of attorney fees will be left to the discretion of the court. Second, the amount of attorney fees must take into account the *Aetna* factors which include, *inter alia*, the results obtained by the attorneys and the time and labor involved, which are difficult to assess in advance of a trial.

Finally, it is the defendant's burden to demonstrate the existence of jurisdiction on removal. Where the complaint does not specifically set forth the amount of damages sought, as is the case here, the defendants must present actual evidence that the amount in controversy is exceeded; simple conjecture [*8] will not suffice. See *Bartnikowski v. NVR, Inc., 307 F. App'x 730, 737 (4th Cir. 2009)* (unpublished) (Finding that amount in controversy is not shown when defendant "has put forth no evidence of its own to support [the claimed amount in controversy, but] rather, has only presented a conjectural argument"). The defendant fails to provide adequate competent evidence regarding potential attorney fees and its arguments are, therefore, insufficient to avoid remand. See *McWha v. Otway, 5:06cv164, 2007 U.S. Dist. LEXIS 60246, at *2 (N.D. W. Va. Aug. 15, 2007)*. Because the potential attorney fees must amount to at least $20,000.00 to justify diversity jurisdiction, and the fees in this case are so unpredictable, this Court finds that the defendant has not met its burden of proving diversity jurisdiction.

IV. Conclusion

For the reasons stated above, the plaintiffs' motion to remand is hereby GRANTED. Accordingly, it is ORDERED that this case be REMANDED to the Circuit Court of Ohio County, West Virginia. It is further ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order [*9] to counsel of record herein and to the Clerk of the Circuit Court of Ohio County, West Virginia. Pursuant to *Federal Rule of Civil Procedure 58*, the Clerk is DIRECTED to enter judgment on this matter.

DATED: July 19, 2013

/s/ Frederick P. Stamp, Jr.

FREDERICK P. STAMP, JR.

UNITED STATES DISTRICT JUDGE

⬥ Positive

As of: May 19, 2015 9:22 AM EDT

# *Knott v. HSBC Card Servs.*

United States District Court for the Northern District of West Virginia

September 8, 2010, Decided; September 8, 2010, Filed

Civil Action No. 3:10-CV-82

**Reporter**

2010 U.S. Dist. LEXIS 101013

JOHN KNOTT, Plaintiff, v. HSBC CARD SERVICES INC., Defendant.

## Core Terms

amount in controversy, removal, federal question, subject matter jurisdiction, diversity jurisdiction, federal court, preemption

## Case Summary

### Overview

Plaintiff alleged four acts, which he contended violate provisions of the West Virginia Consumer Credit and Protection Act (WVCCPA), *W.Va. Code § 46A-2-122, et seq.* Even if a single act were to violate multiple provisions of the WVCCPA, there could only be one recovery per act. Using the proffered maximum recovery per violation of $4,367.20, the maximum recovery under the WVCCPA was $17,468.80. As such, amount in controversy element was not satisfied for diversity jurisdiction.

### Outcome

The motion to remand was granted.

## LexisNexis® Headnotes

Civil Procedure > ... > Removal > Specific Cases Removed > Diversity of Citizenship

Civil Procedure > ... > Removal > Specific Cases Removed > Federal Questions

*HN1* Defendants in civil actions may remove a matter from state to federal court if the latter forum has original subject matter jurisdiction. This requirement can be based upon diversity jurisdiction or federal question

jurisdiction. *28 U.S.C.S. § 1441.* A federal district court has diversity jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *28 U.S.C.S. § 1332.* Further, a federal district court has federal question jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. *28 U.S.C.S. § 1331.* This particular jurisdiction must inhere in the plaintiff's claim, rather than be based on a defense or counterclaim.

Civil Procedure > ... > Removal > Postremoval Remands > Jurisdictional Defects

*HN2* The burden of demonstrating jurisdiction generally resides with the defendant. Likewise, the plaintiff's role in the context of disputes about removability is also clearly defined: the plaintiff is the master of his or her claim. This means that, if the plaintiff chooses not to assert a federal claim or properly joins a nondiverse party, defendants cannot remove the action to federal court on the ground that an alternative course of conduct available to the plaintiff would have permitted removal of the case. Moreover, if federal jurisdiction is doubtful, the case must be remanded.

Civil Procedure > ... > Subject Matter Jurisdiction > Federal Questions > General Overview

*HN3* Federal question jurisdiction exists if a federal question is presented on the face of the plaintiff's properly pleaded complaint. As such, a defendant may not rely on a federal defense to a state law claim as a basis for removal. Thus, the well-pleaded complaint rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

Constitutional Law > Supremacy Clause > Federal Preemption

*HN4* Federal preemption is ordinarily a federal defense to plaintiff's suit. As a defense, it does not appear on the

face of a well-pleaded complaint, and therefore, does not authorize removal to the federal court. Moreover, a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

> Civil Procedure > ... > Jurisdiction > Diversity Jurisdiction > General Overview

> Civil Procedure > ... > Removal > Specific Cases Removed > Diversity of Citizenship

*HN5* Diversity jurisdiction exists in cases between citizens of different states where the amount in controversy exceeds $75,000 exclusive of interest and costs. *28 U.S.C.S. 1332.* The amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal. To calculate this amount, a court must consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied. At the very least, the requirement must be proved by a preponderance of the evidence. Further, where a plaintiff chooses to bring an action in state court, there is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court. Finally, in conducting this analysis, a court is not required to leave its common sense behind.

**Counsel:**  [*1] For John Knott, Plaintiff: Kirk H. Bottner, LEAD ATTORNEY, Law Office of Kirk H Bottner PLLC, Charles Town, WV.

For HSBC Card Services, Inc., Defendant: Jeffrey C. Dunham, LEAD ATTORNEY, Frost Brown & Todd, LLC, Charleston, WV.

**Judges:** JOHN PRESTON BAILEY, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JOHN PRESTON BAILEY

# Opinion

## ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

Currently pending before the Court is the plaintiff's Motion for Remand [Doc. 7], filed August 19, 2010. The

defendant responded on September 2, 2010 [Doc. 12], and the plaintiff responded on September 7, 2010 [Doc.14]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, finds that the plaintiff's motion should be **GRANTED.** Therefore, the Court **REMANDS** this matter to the Circuit Court of Jefferson County.

## BACKGROUND

### I.Factual Allegations

At some point prior to October 30, 2009, the plaintiff entered into an agreement with HSBC Card Services Inc. ("HSBC") for a Union Plus credit card. ([Doc. 3-1] at ¶ 3). On October 30, 2009, the plaintiff filed for bankruptcy in the United States Bankruptcy Court for the Northern District of West Virginia. (Id. at ¶ 4). A copy of the Notice of Bankruptcy was sent to all [*2] of the plaintiff's creditors, including HSBC, on November 5, 2009. (Id. at ¶ 5). The plaintiff did not reaffirm the debt with HSBC and received a discharge of the debt on February 19, 2010. (Id. at ¶ 6). Nevertheless, HSBC continued contacting the plaintiff in an attempt to collect on the debt. (Id. at ¶ 7).

On February 23, 2010, HSBC sent the plaintiff a collection letter. (Id. at ¶¶ 8-9). On February 26, 2010, and March 26, 2010, HSBC sent the plaintiff account statements. (Id. at ¶¶ 10-11). Finally, on April 27, 2010, NCB Management Services, Inc. ("NCB") sent the plaintiff a collection letter on behalf of HSBC. (Id. at ¶¶ 12-13). The plaintiff alleges that these communications were made despite HSBC knowing that the plaintiff was represented by an attorney and having access to the attorney's name, address, and telephone number. (Id. at ¶ 16).

### II.Procedural History

On July 8, 2010, the plaintiff instituted this action in the Circuit Court of Jefferson County, West Virginia, against HSBC. The Complaint [Doc. 3-1] includes two counts: (1) illegal debt collection under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), *W.Va. Code § 46A-2-122, et seq.;* and (2) negligence [*3] per se. In support of Count I, the plaintiff claims that HSBC's communications violated *W.Va. Code § 46A-2-128(e),* which generally prohibits a debt collector from communicating with a consumer whenever it "appears" or "could be easily ascertained" that he or she is represented by an attorney with respect to the

2010 U.S. Dist. LEXIS 101013, *3

debt. Further, in Count II, the plaintiff asserts that these violations constitute negligence per se.

On August 12, 2010, HSBC removed the case based upon federal question jurisdiction, arguing that the plaintiff's claims are preempted by federal law. ([Doc. 3] at ¶ 1). Specifically, HSBC contends that the plaintiff's claims implicate federal bankruptcy law and are preempted insofar as they rely upon violations of the discharge injunction. (Id.).

On August 19, 2010, the plaintiff filed the pending Motion for Remand [Doc. 7], arguing that this Court lacks subject matter jurisdiction. In particular, the plaintiff argues that there is no question of federal law, and that the amount in controversy does not exceed the jurisdictional limit. In support of the first argument, the plaintiff emphasizes that he has only pled state law causes of action. ([Doc. 7-1] at 4-5). In support of [*4] the second, the plaintiff has filed a Stipulation [Doc. 8], which states, in whole, that:

> IT IS HEREBY STIPULATED AND AGREED by the Plaintiff, John Knott, that the amount in controversy does not exceed $75,000.00 in the above-captioned mater.

On September 2, 2010, HSBC filed a Response [Doc. 12], arguing that the Court has subject matter jurisdiction because the Complaint presents a federal question. In this regard, HSBC again emphasizes that insofar as the plaintiff's state law claims rely upon violations of the discharge injunction, they are preempted by federal bankruptcy law.

On September 7, 2010, the plaintiff filed a Reply [Doc. 14], reasserting his argument that his Complaint does not implicate a federal question.

### DISCUSSION

### I. Standard

**HN1** Defendants in civil actions may remove a matter from state to federal court if the latter forum has original subject matter jurisdiction. This requirement can be based upon diversity jurisdiction or federal question jurisdiction. *28 U.S.C. § 1441*. A federal district court has diversity jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *28 U.S.C. § 1332*. Further, [*5] a federal district court has

federal question jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. *28 U.S.C. § 1331*. This particular jurisdiction must inhere in the plaintiff's claim, rather than be based on a defense or counterclaim. *Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 29 S. Ct. 42, 53 L. Ed. 126 (1908)*.

**HN2** The burden of demonstrating jurisdiction generally resides with the defendant. *Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 42 S. Ct. 35, 66 L. Ed. 144 (1921)*. Likewise, the plaintiff's role in the context of disputes about removability is also clearly defined: the plaintiff is the master of his or her claim. *See Oklahoma Tax Com'n v. Graham, 489 U.S. 838, 109 S. Ct. 1519, 103 L. Ed. 2d 924 (1989)*. This means that, "if [the plaintiff] chooses not to assert a federal claim . . . or properly joins a nondiverse party, defendants cannot remove the action to federal court on the ground that an alternative course of conduct available to the plaintiff would have permitted removal of the case." 14B Charles Wright, *Federal Practice and Procedure*, §3721, p. 59 (2009). Moreover, as the Fourth Circuit has indicated, if federal jurisdiction is doubtful, the case must be remanded. *Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)*.

### II. Analysis

### A. [*6] Federal Question Jurisdiction

**HN3** Federal question jurisdiction exists if "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)*. As such, a defendant may not rely on a federal defense to a state law claim as a basis for removal. *Topeka Housing Authority v. Johnson, 404 F.3d 1245, 1247 (10th Cir. 2005)*. Thus, the well-pleaded complaint rule makes the plaintiff "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc., 482 U.S. at 392*. In admitting that the well-pleaded complaint raises only state law causes of action, the defendant argues that "this Court has subject matter jurisdiction over this lawsuit because plaintiffs' [sic] state law claims are preempted by the Federal Bankruptcy Code." ([Doc. 12] at 5). For the reasons that follow, however, the Court finds HSBC's argument unavailing.

**HN4** Federal preemption "is ordinarily a federal defense to plaintiff's suit. As a defense, it does *not* appear on the

2010 U.S. Dist. LEXIS 101013, *6

face of a well-pleaded complaint, and therefore, does not authorize removal to the federal court." *Metropolitan Life Ins. v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987)* [*7] (emphasis added). Moreover, the Supreme Court has also stated that:

> A case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 14, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)*; *see also Taylor, 481 U.S. at 66* ("The touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an 'obvious' preemption defense does not, in most cases, create removal jurisdiction.").

Here, HSBC's preemption argument is merely an anticipated defense. Based upon the foregoing authority, such a defense cannot provide a basis for removal jurisdiction. Accordingly, this Court cannot base a finding of subject matter jurisdiction upon the existence of a federal question. Therefore, unless diversity jurisdiction exists, this case must be remanded.

**B. Diversity Jurisdiction**

The plaintiff argues that diversity jurisdiction does not exist because the amount in controversy [*8] requirement has not been met. In support of this argument, the plaintiff stipulates that the amount in controversy does not exceed $75,000. Without regard to the plaintiff's stipulation,[1] this Court agrees that the amount in controversy requirement has not been met in this case.

**HN5** Diversity jurisdiction exists in cases between citizens of different states where the amount in controversy exceeds $75,000 exclusive of interest and costs.[2] *28 U.S.C. 1332*. The amount in controversy is determined by "considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as [*9] it stands at the time of removal." *Sayre v. Potts, 32 F.Supp.2d 881, 886 (S.D. W.Va. 1999)* (citing *Landmark Corp. v. Apogee Coal Co., 945 F.Supp. 932, 936-37 (S.D. W.Va. 1996))*. To calculate this amount, a court must consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied. *Weddington v. Ford Motor Credit Co., 59 F.Supp.2d 578, 584 (S.D. W.Va. 1999)*; *see also Mullins v. Harry's Mobile Homes, 861 F.Supp. 22, 24 (S.D. W.Va. 1994)* (specifically stating that court may consider complaint, removal petition, and "other relevant matters in the file"). At the very least, the requirement must be proved by a preponderance of the evidence. *Landmark Corp., 945 F.Supp. at 935*. Further, where a plaintiff chooses to bring an action in state court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court . . .." *St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290, 58 S. Ct. 586, 82 L. Ed. 845 (1988)*. Finally, in conducting this analysis, a court "is not required to leave its common sense behind." *Mullins, 861 F.Supp. at 24*.

In this case, the plaintiff alleges four (4) acts, which he contends violate provisions of the WVCCPA. Even if a single act were to violate multiple provisions of the WVCCPA, there can only be one recovery per act. *In re Machnic 271 B.R. 789, 794 (Bankr. S.D. W.Va. 2002)* (citing *Sturm v. Providian Nat'l Bank, 242 B.R. 599 (S.D. W.Va. 1999))*. Using the proffered maximum recovery per violation of $4,367.20, the maximum recovery under the WVCCPA is $17,468.80.[3] While the plaintiff has also pled entitlement to attorneys fees and

---

[1]   In disregarding the plaintiff's stipulation, the Court notes that to be operative such a disclaimer must be "a formal, truly binding, *pre-removal* stipulation signed by counsel and his client explicitly limiting recovery." *McCoy v. Erie Ins. Co., 147 F.Supp.2d 481, 485 (S.D. W.Va. 2001)* (Haden) (emphasis added); *see also Virden v. Altria Group Inc., 304 F.Supp.2d 832, 847 (N.D. W.Va. 2004)* (Keeley) (following *McCoy* rule); *Asbury-Casto v. Glaxosmthkline, Inc., 352 F.Supp.2d 729, 733 (N.D. W.Va. 2005)* (Stamp) (same); *Smith v. Booth, 2007 U.S. Dist. LEXIS 75145, 2007 WL 2963776, *3 (S.D. W.Va. Oct. 9, 2007)* (Goodwin) (same).

[2]   In this regard, the Court notes that it is undisputed that [*10] the plaintiff is a citizen of West Virginia and HSBC is a citizen of another state. As such, the sole issue is whether the amount in controversy has been satisfied.

[3]   The Court notes that there is no potential [*11] cancellation of debt in this matter, as the plaintiff alleges he has already received a discharge of the debt in question.

2010 U.S. Dist. LEXIS 101013, *9

costs, the potential recovery is too speculative to support a finding that the removing part has proven damages in excess of $75,000 by a preponderance of the evidence. Therefore, inasmuch as the removing party has failed to satisfy its burden of proving that the amount in controversy is in excess of the jurisdictional amount and given the directive from the Fourth Circuit that when federal jurisdiction is doubtful remand is proper, this case must be remanded.

In sum, the Circuit Court of Jefferson County possesses jurisdiction to adjudicate the claims made by the plaintiff under West Virginia law. Without either diversity or federal question jurisdiction, any judgment rendered by this Court would be immediately vacated on appeal for lack of subject matter jurisdiction. As such, this case must be remanded to the Circuit Court of Jefferson County.

## CONCLUSION

For the foregoing reasons, the Court **REMANDS** this case to the Circuit Court of Jefferson County, West Virginia.

It is so **ORDERED.**

The Clerk is hereby directed to transmit copies of this Order to counsel of record as well as to the Circuit Court of Jefferson County, West Virginia.

**DATED:** September 8, 2010.

/s/ John Preston Bailey

**JOHN PRESTON BAILEY**

**UNITED STATES DISTRICT JUDGE**

**ℹ** Cited

As of: May 19, 2015 9:13 AM EDT

## *Lewis v. Mobile Training & Educ., Inc.*

United States District Court for the Southern District of West Virginia, Huntington Division

May 5, 2009, Decided; May 5, 2009, Filed

CIVIL ACTION NO. 3:09-0135

**Reporter**

2009 U.S. Dist. LEXIS 38365; 2009 WL 1252325

JEFFREY A. LEWIS, Plaintiff, v. MOBILE TRAINING & EDUCATION, INC., Defendant.

## Core Terms

secretary of state, removal, principal office, corporation's, certificate of authority, provisions, registered agent, doing business, appointed, summons, mail

**Counsel:** [*1] For Jeffrey A. Lewis, Plaintiff: Jeffrey V. Mehalic, LEAD ATTORNEY, LAW OFFICES OF JEFFREY V. MEHALIC, Charleston, WV.

For Mobile Training & Education, Inc., Defendant: Bryan R. Cokeley, J. A. Curia, III, LEAD ATTORNEYS, STEPTOE & JOHNSON, Charleston, WV.

**Judges:** ROBERT C. CHAMBERS, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT C. CHAMBERS

## Opinion

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Remand (Doc. 6), Defendant's Motion for Leave to File a Surreply in Opposition to Plaintiff's Motion to Remand (Doc. 12), and Plaintiff's Motion to Strike Defendant's Surreply in Opposition to Plaintiff's Motion to Remand (Doc. 14). As an initial matter, the Court will consider all of the briefs filed on this issue. Defendants motion for surreply (Doc. 12) is **GRANTED;** Plaintiff's motion to strike that surreply (Doc. 14) is **DENIED.** After consideration of these briefs, and for the reasons explained below, the Court **GRANTS** Plaintiff's Motion to Remand (Doc. 14) and **ORDERS** this case be transferred back to the Circuit Court of Wayne County, West Virginia.

### Background

Plaintiff, Jeffery Lewis, filed suit in the Circuit Court of Wayne County, West Virginia on December 29, 2008. The West Virginia Secretary [*2] of State accepted Lewis's summons and complaint on December 31, 2008. The Secretary of State then mailed the summons and complaint to National Registered Agents, Inc ("NRAI"), Defendant's appointed agent for service of process in West Virginia, on January 5, 2009. Both the Secretary of State's records and a certified mail receipt show that NRAI received these documents on January 5, 2009. For some unknown reason NRAI did not send the summons and complaint to Defendant's principal office until January 16, 2009. Despite the Secretary of State and postal records, the transmittal sheet sent with the summons and complaint from NRAI to Defendant states that service was not received until January 16th. Based on the information in the transmittal sheet, Defendant waited until February 13, 2009 to remove the case.

Plaintiff argues that, because NRAI is Defendant's appointed agent, service was effectuated on January 5, 2009 and that the Defendant filed outside the 30-day window for removal provided by *28 U.S.C. § 1446(b)*. Defendant argues that removal was timely because Plaintiff's attempt at service was insufficient. The State of West Virginia revoked Defendant's certificate of authority prior [*3] to service. According to Defendant, this revocation changed the procedures under which it might properly be served. Because no one complied with the necessary procedures, Defendant argues that service was not complete until February 13, 2009 -- the date Defendant filed for removal and waived the defense of improper service.

The arguments over when service occurred complicate this motion. The parties each argue different sides of competing and possibly conflicting provisions of the West Virginia Code. Because of the standard under

which this Court reviews a motion to remand, however, it need not conclusively determine which interpretation of the West Virginia Code is correct. There is enough doubt about federal jurisdiction to justify remand.

**Analysis**

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." _Mulcahey v. Columbia Organic Chemicals Co, Inc. 29 F.3d 148, 151 (4th Cir. 1994)_. "Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction." _Id._ "If federal jurisdiction is doubtful, a remand is necessary." _Id._ Here the question of whether removal was proper depends upon whether service [*4] was properly effectuated. This is because the 30-day window for removal is only triggered by "formal service." _Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc, 526 U.S. 344, 347, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999)_. Federal courts must look to state law to determine the procedure for formal service of process. _Id. at 352-53_.

The parties argue competing provisions of West Virginia statutory law. Plaintiff cites _W.Va. Code § 31D-15-1510_, which governs "Service on a foreign corporation." Given the title, it is not surprising that this section details the methods by which a plaintiff may effectuate service upon a corporation based outside of West Virginia. Part _(d)_ of this section provides that "the Secretary of State is hereby constituted the attorney-in-fact for and on behalf of each foreign corporation authorized to do or transact business in this state pursuant to provisions of this chapter." Part _(e)_ of the section states, "[a]ny foreign corporation doing business in this state without having been authorized to do so pursuant to the provisions of this chapter is conclusively presumed to have appointed the Secretary of State as its attorney-in-fact with authority to accept service of notice and process on [*5] behalf of the corporation . . ." Thus, sending service to the Secretary of State is a proper method of effectuating service upon either corporations authorized to do business in West Virginia or corporations doing business in West Virginia without authorization.

The method used by the Secretary of State to complete service does differ depending upon whether or not the corporation is authorized to do business in West Virginia. If the corporation is authorized the Secretary may send it to the corporation's registered agent, the person last designated to receive service, or, if there is no such person, to the corporation's principal place of business.

_W.Va. Code § 31D-15-1510(d)_. If the corporation is not authorized to do business in West Virginia, the Secretary of State has fewer options. In that situation, "the Secretary of State shall . . . transmit one copy of the process or notice by registered or certified mail . . . to the corporation at the address of its principal office." _W.Va. Code § 31D-15-1510(e)_. These directions to the Secretary of State are mirrored in _W.Va. Code § 31D-15-1531_, which outlines the "Procedure for and effect of revocation [of certificate of authority]." That [*6] section provides, "[u]pon receipt of process [on a corporation whose certificate of authority has been revoked] the secretary of state shall mail a copy of the process to the secretary of the foreign corporation at its principal office . . ." _W.Va. Code § 31D-15-1531(d)_. This same section provides, "[r]evocation of a foreign corporation's certificate of authority does not terminate that authority of the registered agent of the corporation." W.Va. Code § 31-15-1531(e). Therefore, although a registered agent does not lose the authority to accept service for a corporation whose certificate of authority has been revoked, the Secretary of State is directed to send service not to that agent, but to the corporation's principal office.

Here, instead of sending the certificate of authority to the Defendant's principal office, the West Virginia Secretary of State sent it to their appointed agent. Defendant's argument is that this mistake by the Secretary of State was fatal to the completion of effective service. Such an argument is plausible. It is not, however, the only or the most likely interpretation of the statute.

The provisions of the West Virginia Code giving the Secretary of State authority [*7] to act as attorney-in-fact for both authorized and un-authorized corporations both contain identical language indicating when service is sufficient. These provisions each provide "[s]ervice or acceptance of process or notice is sufficient if the return receipt is signed by an agent or employee of the corporation. . . ." _W.Va. Code § 31D-15-1510(d)_; _accord. W.Va. Code § 31D-15-1510(e)_. In this case there is evidence that an agent of the Defendant signed a certified mail receipt and, consequently, completed service on January 5, 2009.

It is probable that Defendant's agent made a mistake by waiting until the 16th of January to send the complaint and summons to Defendant's principal office, and another mistake by indicating January 16th as the date of its own receipt of those documents. It is also possible

2009 U.S. Dist. LEXIS 38365, *7

that the West Virginia Secretary of State erred by sending the pertinent documents to Defendant's registered agent rather than to its principal office. A reasonable statutory reading, however, shows that these mistakes -- neither of which was the fault of the plaintiff -- did not affect on the completion of service. Records show that Defendant's appointed agent received service on January [*8] 5, 2009. Defendant did not file for removal until February 13, 2009. There is substantial doubt about whether this case was removed within the necessary 30-day window, and about whether federal jurisdiction exists. Remand is proper.

**Conclusion**

For the reasons explained above, the Court **GRANTS** Plaintiff's Motion to Remand (Doc. 14) and **ORDERS** this case be transferred back to the Circuit Court of Wayne County, West Virginia. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: May 5, 2009

/s/ Robert C. Chambers

ROBERT C. CHAMBERS

UNITED STATES DISTRICT JUDGE

No *Shepard's* Signal™
As of: May 19, 2015 9:20 AM EDT

## *Massey v. Green Tree Servicing, LLC*

United States District Court for the Southern District of West Virginia, Beckley Division

March 30, 2011, Decided; March 30, 2011, Filed

CIVIL ACTION NO. 5:10-cv-00533

**Reporter**
2011 U.S. Dist. LEXIS 34929; 2011 WL 1230256

GARY D. MASSEY and REBECCA J. MASSEY, Plaintiffs, v. GREEN TREE SERVICING, LLC, Defendant.

## Core Terms

removal, Plaintiffs', consolidation, aggregated, civil action, costs, jurisdictional amount, undivided interest, telephone call, stipulations, district court, state court, telephone, damages, parties, attorney's fees, consumer, notice, amount in controversy, telephone number, lack of subject matter jurisdiction, award of attorney's fees, objectively reasonable, collection, Servicing, asserting, diversity, requisite

**Counsel:** [*1] For Gary D. Massey, and, Rebecca J. Massey, Plaintiffs: Christopher B. Frost, Ralph C. Young, LEAD ATTORNEYS, HAMILTON BURGESS YOUNG & POLLARD, Fayetteville, WV.

For Green Tree Servicing, LLC, Defendant: Bruce M. Jacobs, Nicholas P. Mooney, II, LEAD ATTORNEY, Patrick R. Barry, SPILMAN THOMAS & BATTLE, Charleston, WV.

**Judges:** IRENE C. BERGER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** IRENE C. BERGER

## Opinion

### MEMORANDUM OPINION AND REMAND ORDER

The Court has reviewed the motion of Plaintiffs, Gary D. Massey and his wife Rebecca J. Massey, seeking remand of this matter to the Circuit Court of Raleigh County, West Virginia, on the grounds that the amount in controversy for diversity jurisdiction has not been met. Upon consideration of the motion, the opposition thereto, the reply and the entire record therein, the Court finds, for the reasons discussed below, that Plaintiffs' Motion to Remand for Lack of Subject Matter Jurisdiction and For Fees and Costs (Document No. 6) is **granted in part.**

### *I. BACKGROUND AND PROCEDURAL HISTORY*

This case originated as two separate but identical actions filed in the Circuit Court of Raleigh County, West Virginia, on September 10, 2009. The Plaintiffs, Gary and Rebecca Massey, husband and wife, [*2] sought to enforce their consumer protection rights against unlawful debt collection practices made in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). Defendant Green Tree Servicing, LLC, ("Green Tree") services the loan contract and security agreement Plaintiffs entered into in 1996 for the purchase of a 1997 Commodore Corp. Atrium Home ("Manufactured Home"). At some point, the Plaintiffs became delinquent on the loan and Defendant began its attempts to collect on the debt. In their respective complaints, each Plaintiff alleged that they retained an attorney to represent their interest in connection with this debt and that they informed Defendant of the same. However, Defendant continued to place telephone calls to their residential telephone number after it appeared that they were represented by an attorney and the attorney's name and telephone number were known or could reasonably be ascertained. Based on that conduct, each Plaintiff alleged repeated violations of the WVCCPA and state tort claims for negligence, intentional infliction of emotional distress and invasion of privacy. In their complaints, the Plaintiffs stipulated that each Plaintiff would [*3] not seek or accept an amount greater than $74,999, including attorney fees, but excluding interest and costs.

On October 14, 2009, Green Tree removed both civil actions to this Court pursuant to *28 U.S.C. §§ 1332* and

2011 U.S. Dist. LEXIS 34929, *4

*1441*. [1] Green Tree asserted that the jurisdictional amount requirement was met because each Plaintiff separately requested a declaration that the debt on their loan be cancelled in conjunction with the other monetary relief sought. On November 6, 2009, the parties agreed to a joint remand of both civil actions because the Plaintiffs agreed that they would not seek the remedy of debt cancellation and that they were seeking no more than $74,999 in each civil action, in accordance with their stipulations. On February 1, 2010, the Honorable Thomas E. Johnston remanded both civil actions to the state court based on the parties' stipulations and agreement.

After remand, Defendant moved to dismiss each action for the failure to join an indispensable party or, alternatively, to consolidate the two actions. [2] Plaintiffs did [*4] not object to the consolidation, but asserted that the consolidation would "in no way affect[] either of [their] Stipulation[s] to cap their damages at $75,000.00." Def.'s Ex. A-1, Plaintiffs' Response to Defendant's Motion Regarding Indispensable Parties and Consolidation (Document No. 1-1) at page 11. On March 25, 2010, the Honorable Robert A. Burnside, Jr., Circuit Judge of the Raleigh County Circuit Court, refused to dismiss the cases finding preliminarily that "it is possible that either of the plaintiffs could maintain a separate claim without the participation of the other." Def.'s Ex. A-1, March 25, 2010 Memorandum from Judge Burnside to the parties (Document No. 1-1) at 17. Instead, the state court granted Defendant's alternative motion for consolidation and stated as follows:

> Each complaint makes reference to the same acts allegedly committed by the defendant in an effort to collect a joint debt from the plaintiffs. Each plaintiff cites to the same provisions of law with respect to the remedies claimed. Upon those conclusions, the court concludes [pursuant to Rule 42 of the West Virginia Rules of Civil Procedure] that there exists a sufficient commonality of law and fact that [*5] these two actions should be consolidated.

. . .

> This opinion and ruling does not reach the question whether each plaintiff may have a separate remedy.

(*Id.* at 18.) [3]

On April 20, 2010, Defendant removed the consolidated case to this Court asserting diversity jurisdiction pursuant to *28 U.S.C. § 1332*. Defendant asserted that pursuant to *28 U.S.C. § 1446*, the consolidated case was removable on the basis of the state court's order of consolidation and that the amount-in-controversy was met. [*6] Defendant contended that "the claims that Plaintiffs assert are based on a common undivided interest and the relief that may be granted to Plaintiffs if they succeed on all of their claims exceeds the minimum amount required for removal based on *28 U.S.C. § 1332*." Notice of Removal ("Removal Notice") (Document No. 1), ¶ 4. Plaintiffs timely moved for remand arguing in sum that the removal is improper because "[c]laims from multiple plaintiffs may not be aggregated together to achieve the jurisdictional amount unless they seek to enforce a single title or right in which they have a common and undivided interest[]" which Plaintiffs contend they are not doing. Memorandum in Support of Motion to Remand for Lack of Subject Matter Jurisdiction and For Fees and Costs ("Pls.' Mem.") (Document No. 7). Plaintiffs also argue that Defendant's removal was not objectively reasonable warranting an award of attorney fees and costs. The matter is ripe for this Court's consideration.

*II. APPLICABLE LAW*

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. *28 U.S.C. § 1441(a)*. [4] Federal district courts have original jurisdiction [*7] over all civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of interest

---

[1]   See *Gary D. Massey v. Green Tree Servicing, LLC*, Civil Action No. 5:09-cv-1117 and *Rebecca J. Massey v. Green Tree Servicing, LLC*, Civil Action No. 5:09-cv-1118.

[2]   Defendant sought the consolidation of the two civil actions, under one binding $74,999 stipulation.

[3]   On April 12, 2010, Defendant requested the court to "clarify" its March 25, 2010 order with respect to the question of whether only one recovery is permitted by each of the plaintiffs. The court declined to "clarify" a matter that it did not reach in the order of March 25, 2010, but ordered that "[i]f either party wishes to be heard on the issue [of] whether a separate or joint remedy is supported, a motion on that subject may be filed to request whatever relief the moving party believes to be necessary." Def.'s Ex. A-1, April 12, 2010 Memorandum from Judge Burnside to the parties (Document No. 1-1) at 4.

[4]   **Section 1441(a)** states in pertinent part:

Case 1:15-cv-00086-JPB   Document 1-4   Filed 05/19/15   Page 24 of 40   PageID #: 54

Page 3 of 6
2011 U.S. Dist. LEXIS 34929, *7

and costs. *28 U.S.C. § 1332(a)(1)*. The procedure for removal is addressed in *28 U.S.C. § 1446(b)*. *Section 1446* requires a defendant to file a notice of removal within thirty days after receipt of the initial pleading. However, as is important in this case, Congress has also provided that where an initial pleading is not removable as originally filed, but subsequently becomes subject to removal through some later event:

> [A] notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by *section 1332* of this title more than 1 year after commencement of the action.

*28 U.S.C. § 1446(b)*. It is the long-settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating [*8] the court's jurisdiction over the matter. See *Strawn et al. v. AT &T Mobility, LLC et al., 530 F.3d 293, 296 (4th Cir. 2008)* (citations omitted); see also *Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)* ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted). Accordingly, in this case, Defendant has the burden to show the existence of federal jurisdiction by a preponderance of the evidence. See *White v. Chase Bank USA, NA., Civil Action No. 2:08-1370, 2009 U.S. Dist. LEXIS 76150, 2009 WL 2762060, at *1 (S.D. W. Va. Aug. 26, 2009)* (Faber, J) (citing *McCoy v. Erie Insurance Co., 147 F.Supp.2d 481, 488 (S.D. W. Va. 2001))*. A defendant must furnish evidence in support of the statutory jurisdictional amount. "[A] mere assertion that the amount in controversy exceeds $75,000.00 is insufficient to meet this burden." *White, 2009 U.S. Dist. LEXIS 76150, 2009 WL 2762060 at *2*. A motion to remand the case on the

basis of any defect other than lack of subject matter jurisdiction "must be made within 30 days after the filing of the notice of removal." *28 U.S.C. § 1447(c)*. In deciding whether to remand, this Court must "resolve all doubts about the propriety of removal in [*9] favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999)*.

### III. DISCUSSION

The parties do not dispute that they are diverse for the purpose of this Court's jurisdiction or that Defendant's motion to remove the consolidated action is timely upon the issuance of the state court's order of March 25, 2010. Further, Plaintiff does not challenge whether the state court's order of March 25, 2010, properly provided Defendant a basis for removal for a second time. Therefore, determining whether jurisdiction is proper in this Court requires only the resolution of whether Plaintiffs' claims may now be aggregated to achieve the $75,000 jurisdictional requirement.

In their motion, Plaintiffs press for remand on the basis that: (1) their stipulations [*10] are still binding despite the state court's order of consolidation [5] and (2) they are not seeking to enforce a single title or right in which they have a common and undivided interest. Pls.' Mem at 4-7. Plaintiffs contend that it is the nature of the right asserted, not that of the relief requested, which is determinative of whether claims of multiple plaintiffs may be aggregated. (*Id.* at 6.) Plaintiffs argue that their claims may not be aggregated because they are asserting rights that state statutes and tort law grant to each of them as individuals-not as a group, and that their individual ability to recover, and the amount of any recovery, does not depend on the other Plaintiff. (*Id.* at 5-7.) Further, Plaintiffs argue that the WVCCPA grants the ability to recover actual damages, penalties and attorney fees to "the consumer"and that Defendant does not owe an obligation to Plaintiffs as a group. (*Id.* at 6.) Plaintiffs also argue that "[t]he only thing that has changed between [Defendant's second removal] and

---

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

*28 U.S.C. § 1441(a)*.

[5]  Plaintiffs opine that Defendant appears, in its notice of removal, to argue that their individual claims each exceed the jurisdictional minimum. Pls.' Mem. at 3.

2011 U.S. Dist. LEXIS 34929, *10

the earlier remand order is the two cases' consolidation." (*Id.* at 5.) Plaintiffs contend that their claims for actual damage, statutory penalties, attorney fees and punitive [*11] damages cannot be aggregated. (*Id.* at 7-9.) Plaintiffs also contend that an award of attorney fees and costs are warranted because "a cursory review of the applicable law-including decisions that Green Tree cites-reveals the lack of federal jurisdiction." (*Id.* at 10.)

Defendant, in opposition, argues that its removal is proper because Plaintiffs' stipulations in the original civil actions do not defeat diversity jurisdiction since the state court did not combine Plaintiffs' civil actions into a single civil action with a total recovery of no more than $74,999. Defendant Green Tree Servicing LLC's Response in Opposition to Motion to Remand for Lack of Subject Matter Jurisdiction and Fees and Costs ("Def.'s Oppn") (Document No. 9) at 3-4. Defendant also argues that Plaintiffs' claims can be aggregated because they relate to a common and undivided interest in their right to sue under the WVCCPA in that their allegations are for statutory violations related to telephones calls allegedly made as a result of a joint contract on which [*12] they are cosignatories, and the telephone calls were allegedly made to their joint telephone number regarding a debt of which they are co-obligors. (*Id.* at 5-7.) Defendant asserts that "[t]his Court has yet to rule on the issue of whether separate WVCCPA claims of a husband and wife each alleging the same questions of law, fact and injury based upon a defendant's alleged calls to a joint telephone number can be aggregated together in order to meet the amount in controversy." (*Id.* at 5-6.) However, in *Kopff v. World Research Group, LLC, 298 F.Supp.2d 50 (D.D.C. 2003)*, "at least one federal court has held that the separate claims of husband and wife relating to communications to one communication device are based upon a common undivided interest and may be aggregated to determine the amount in controversy for diversity jurisdiction." (*Id.* at 5.) [6] Moreover, Defendant disputes Plaintiffs' contention that their individual recovery does not depend on the other Plaintiff's recovery when the

Court considers who would be able to collect damages on the alleged unanswered telephone calls to Plaintiffs' joint home telephone. Defendant argues that this Court has held that violations of the WVCCPA [*13] may even occur as a result of "unanswered telephone calls" and that both Plaintiffs cannot recover for such calls, otherwise there would be a double recovery for one act. (Id. at 8.) Based on these arguments, Defendant asserts that the jurisdictional amount of each Plaintiff's claims for actual and punitive damages, statutory penalties and attorney fees and costs exceed $75,000. Defendant also assets that it has an objectively reasonable basis for seeking removal given the court's consolidation order.

In their Reply, Plaintiffs claim that *Kopff* is distinguishable, in that the statute at issue in *Kopff* is different from the applicable WVCCPA provisions. Plaintiffs maintain that the WVCCPA grants individual rights to "any person" and the "consumer."

The general rule is that claims brought by a single plaintiff against a single defendant can be aggregated when calculating the amount in controversy, regardless of whether the claims are related to each other. *Snyder v. Harris, 394 U.S. 332, 335, 89 S. Ct. 1053, 22 L. Ed. 2d 319 (1969)* ("Aggregation has been permitted . . . in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant.") Additionally, as the parties acknowledge, aggregation is also permitted in cases in which two or more plaintiffs unite to enforce a [*15] single title or right in which they have a common undivided interest. (*Id.*); *see also Zahn v. Int'l Paper Co., 414 U.S. 291, 293, 94 S. Ct. 505, 38 L. Ed. 2d 511 (1973)* (the Supreme Court applied, in the context of a class action, a standard it articulated in 1911: "'[w]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided

[6]  In *Kopff*, a husband and wife brought suit in the District of Columbia Superior Court alleging defendants unlawfully transmitted unsolicited advertisements to their fax machine in violation of the District of Columbia Consumer Protection and Procedures Act and the Telephone Consumer Protection Act, which provides a private right of action against any person who "use[s] any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine," *47 U.S.C. § 227(b)(1)(C)*. The defendants removed the action to the United States District Court for the District of Columbia. The plaintiffs sought to remand the case by arguing, among other things, [*14] that their claims were separate and independent claims against the seven defendants. The district court found that aggregation was warranted where the plaintiffs asserted "'an integrated claim'-in other words, if the right is a collective right pursuant to which one plaintiff's failure to collect his or her share increases the remaining plaintiffs' damages." *Kopff, 298 F.Supp. 2d at 56*) (citations omitted).

interest, it is enough if their interest collectively equal the jurisdictional amount.'") (quoting *Troy Bank v. G.A. Whitehead & Co., 222 U.S. 39, 40-41, 32 S. Ct. 9, 56 L. Ed. 81 (1911)*; *Glover v. Johns-Manville Corp, 662 F.2d 225, 231 (4th Cir. 1981)*.

Because Defendant has not shown by a preponderance of the evidence that Plaintiffs' claims are to "enforce a single title or right in which they have a common undivided interest," aggregation of their claims is not warranted. It is readily apparent from the relevant facts known at the time of Defendant's second removal, that Plaintiffs jointly purchased the 1997 manufactured home, that they are jointly liable for that debt, [*16] and that the alleged unlawful debt collection telephone calls were made to the couple's residential telephone number. There is no question that each Plaintiff has a common interest in the home which is the subject of the debt. However, Defendant cites to no authority for the proposition that the WVCCPA limits its protection from unlawful debt collection practices to only one co-debtor or consumer, as that term is defined in *W.V. Code § 46A-1-102(12)*, and not to both. This Court does not find it dispositive that these Plaintiffs are married or that the calls were allegedly placed to a telephone to which they both had access. Defendant's argument that a single title or right in which there is a common and undivided interest exists in these circumstances would seemingly preclude claims made by co-debtors or co-signors of debt, who are unlawfully contacted by a debt collector at different times, simply because they have the same telephone number. It seems obvious, that a debt collector could call each co-debtor in an attempt to collect on a debt and engage in prohibitive communications which gives rise to a claim of action, exclusive of each debtor. While the substance of Plaintiffs' claims [*17] appears to be identical, upon the record before the court, there is no evidence that Plaintiffs intend to allege the same statutory violation for each of the allegedly unlawful telephone calls. In other words, the allegations in the Complaint do not foreclose that Ms. Massey may be seeking enforcement of a statutory right under the WVCCPA for violations which occurred as a result of phone calls made to Plaintiffs' residence which were fielded by her (say, on Monday, Tuesday or Wednesday), while her husband could be asserting a statutory violation for calls that he received at times in which he was in the home. There is no evidence before the Court that each Plaintiff's claims are duplicative. This is consistent with the state court's preliminary finding that "it is possible that either plaintiff could maintain a separate claim without the participation of the other." Additionally, now that Plaintiffs are not seeking the remedy of debt cancellation, there are no claims by one Plaintiff that would necessarily benefit the other Plaintiff. Moreover, Defendant does not contest that Plaintiffs' state law tort claims are separate and distinct claims as they are based on alleged individual [*18] injury.

While, *Kopff* can be viewed as illustrative, this Court finds it is unpersuasive given the discussion above. Further, in *Kopff*, the United States District Court's holding was based on its finding that the right asserted in that case to recover for multiple faxes to a single business was a collective one in which one plaintiff's failure to collect his or her share increases the remaining plaintiff's damages. As discussed above, there is no set of facts currently before this Court which would reveal such a remedy. Defendant's argument that this Court should find a common and undivided interest because of Plaintiffs' opportunity to recover for "unanswered telephone calls" is unavailing. A review of the Plaintiffs' complaints does not reveal that they seek damages for any unanswered telephone calls. Therefore, consideration of that issue is speculative and is not demonstrative of a need for aggregation to meet the requisite jurisdictional amount. Moreover, in *Kopff*, the unlawful communications were to a fax machine, not a telephone where there is the opportunity for individualized abusive or harassing collection practices. Here, there is the opportunity for the debt collector to [*19] seek loan repayment from one spouse when the other spouse has declined to participate in further debt collection communications. Defendant has not shown that a "collective right" exists under the WVCCPA where telephone calls are directed to the same telephone but are fielded by co-debtors at separate times. Therefore, the record before the Court does not provide for a finding that Plaintiffs' claims are to enforce a single title or right, in which they have a common and undivided interest.

Further, to the extent that Defendant, in its opposition, makes the argument that Plaintiffs individually exceed the $75,000 jurisdictional amount, that assertion is not borne out by the record, given the Plaintiffs' binding stipulations. Each Plaintiff stipulated in their complaint that they "shall neither seek or accept an amount greater than $74,999.00 in this case, including any award of attorney fees, but excluding interest and costs." These parties filed contemporaneously with their Complaints a separate affidavit signed by the respective Plaintiffs and their attorney, making the same assertion. This Court

has previously relied on those Stipulations in its decision to remand the matter to state [*20] court. The nature of those stipulations has not changed in light of the state court's consolidation order. This is especially so, given that the state court specifically made no findings about whether or not each Plaintiff may have a separate remedy. Consequently, there is no basis for this Court to find that Plaintiffs' stipulations are not still binding after the state court's consolidation. Therefore, this Court finds that the requisite jurisdictional amount in controversy has not been met.

In sum, it is long established that the time for assessing the requisite jurisdictional amount is at the time of removal. There being no evidence to support the aggregation of Plaintiffs' claims, given the nature of the state court's order of consolidation, and upon a review of the evidence in the record, the Court finds that Defendant has not shown by a preponderance of the evidence that the requisite jurisdictional amount has been satisfied. This Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999)*.

Finally, Plaintiffs assert that Defendant's removal was not objectively reasonable [*21] given the case law upon which it relied. Pursuant to *28 U.S.C. § 1447(c)*, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The United States Supreme Court in *Martin v. Franklin Capital Corp., 546 U.S. 132, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005)*, has instructed that:

> [T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under *[Section] 1447(c)* only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.

(*Martin, 546 U.S. at 141*) (citations omitted). To the

extent that Plaintiffs may believe an award of attorney fees is automatic upon a court's determination that a remand is warranted, this Court disagrees. The Supreme Court in *Martin* foreclosed any such automatic fee-shifting argument when it considered the language used in *Section 1447(c)*. See *Martin 546 U.S. at 136-37*. The Supreme Court explained that *Section 1447(c)* provides "that a remand order 'may' require payment of attorney's fees-not 'shall' or 'should.'" (*Id. at 136*.) [*22] This language clearly indicates that a district court has discretion in awarding attorney fees on remand. Therefore, this Court finds that no award is warranted because Defendant's removal was not objectively unreasonable in light of the fact that the state court's order of consolidation did not address whether Plaintiffs enjoyed a separate remedy in the consolidated action. Moreover, neither Plaintiffs nor Defendant sought to litigate that matter, as they were invited to do so by the state court. Therefore, Plaintiffs' motion for an award of attorney fees and costs is denied.

*IV. CONCLUSION*

For the reasons stated above, this Court does hereby **ORDER** that Plaintiffs' Motion to Remand for Lack of Subject Matter Jurisdiction and For Fees and Costs (Document No. 6) is **GRANTED IN PART AND DENIED IN PART.** [7]

The Court **DIRECTS** the [*23] Clerk to send a certified copy of this Memorandum Opinion and Remand Order to the Circuit Clerk of Raleigh County, West Virginia, and a copy to counsel of record and unrepresented party.

ENTER: March 30, 2011

/s/ Irene C. Berger

IRENE C. BERGER, JUDGE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF WEST VIRGINIA

---

[7]   In light of the foregoing, this Court need not consider Plaintiffs' Motion Seeking a Determination of the Remand Issue (Document No. 21). Consequently, said motion is terminated as moot.

◆ Positive
As of: May 19, 2015 9:21 AM EDT

# *Maxwell v. Wells Fargo Bank, N.A.*

United States District Court for the Southern District of West Virginia

October 9, 2009, Decided; October 9, 2009, Filed

Civil Action No. 2:09-0500

**Reporter**
2009 U.S. Dist. LEXIS 94476; 2009 WL 3293871

LINDA MAXWELL, Plaintiff, v. WELLS FARGO BANK, N.A., Defendant.

## Core Terms

violations, damages, amount in controversy, alleges, attorneys', humiliation, annoyance, emotional distress, diversity, foreclosure proceeding, civil penalty, correspondence, calculation, settlement, wrongfully, contends, jurisdictional, parties, removal

**Counsel:** [*1] For Linda Maxwell, Plaintiff: Josef A. Horter, LEAD ATTORNEY, TURNER & JOHNS, Charleston, WV.

For Wells Fargo Bank, N.A., Defendant: John C. Lynch, LEAD ATTORNEY, TROUTMAN SANDERS, Virginia Beach, VA.

**Judges:** John T. Copenhaver, Jr., United States District Judge.

**Opinion by:** John T. Copenhaver, Jr.

## Opinion

*MEMORANDUM OPINION AND ORDER*

Pending is the plaintiff's motion to remand for lack of subject matter jurisdiction, filed June 8, 2009.

I. Factual Background

This action, filed on March 27, 2009, in the Circuit Court of Kanawha County, arises from the defendant's conduct relating to the plaintiff's mortgage. The plaintiff seeks recovery against the defendant for multiple alleged violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), *West Virginia Code § 46A-2-101, et seq.* Defendant removed on the basis of

federal question, diversity and supplemental jurisdiction on May 6, 2009. As noted, plaintiff moved for remand on June 8, 2009. Specifically, plaintiff concedes that diversity of citizenship exists between the parties, but contends that the amount in controversy does not exceed $ 75,000 as required under *28 U.S.C. § 1332*. The total amount sought by plaintiff is not specified in the complaint.

According [*2] to the complaint, plaintiff purchased her house located at 232 Oakwood Drive, Charleston, West Virginia, for $ 57,000 in 1996. (Compl. P 7). BankOne originally financed the purchase, and later sold plaintiff's loan to Washington Mutual Bank. (*Id.* at 8). Washington Mutual Bank sold plaintiff's loan to defendant in 2005. (*Id.*).

Plaintiff's monthly payments were initially $ 615.00, but recently increased to $ 671.56 a month. (*Id.* at 10). Plaintiff states that she never received notice of the increase in payments. (*Id.* at 11). Following the increase, plaintiff made three payments to defendant in June, July, and August, 2008. (*Id.* at 12). Defendant returned these payments to plaintiff, including the August payment which plaintiff made for the increased amount of $ 671.56. (*Id.*).

When plaintiff contacted defendant about the return of her payments, defendant advised her that no further payments would be accepted from her unless her account was brought current immediately and in full. (*Id.* at 14). Plaintiff sought a "workout" or resolution of her mortgage arrears, but defendant declined. (*Id.* at 15). Defendant requested the trustee under plaintiff's deed of trust to initiate foreclosure proceedings [*3] and the trustee noticed a foreclosure sale of plaintiff's property for October 8, 2008. (*Id.* at 16).

In Count I of the complaint, titled " Failure to Accept Payments," the plaintiff asserts that defendant unlawfully refused to accept and apply plaintiff's June,

2009 U.S. Dist. LEXIS 94476, *4

July, and August, 2008, payments to plaintiff's loan in violation of *W. Va. Code § 46A-2-115*.

In Count II, titled "Illegal Debt Collection," plaintiff alleges that defendant made false representations regarding the character, extent, or amount of a claim against plaintiff through written correspondence and foreclosure proceedings in violation of *W. Va. Code § 46A-2-127(d)*. Plaintiff further alleges that defendant charged her account interest on payments wrongfully refused by defendant in violation of *W. Va. Code § 46A-2-127(d)*.

In Count III, titled "False and Unconscionable Debt Collection," plaintiff contends that defendant made false representations regarding the character, extent, or amount of a claim against plaintiff through written correspondence and foreclosure proceedings in violation of *W. Va. Code § 46A-2-127(d)*. Plaintiff further contends that defendant charged her interest on payments wrongfully refused by defendant **[*4]** in violation of *W. Va. Code § 46A-2-127(d)*.

Plaintiff seeks actual damages, civil penalties of $ 4,400 [1] for each violation pursuant to *W. Va. Code § 46A-2-101*, reasonable attorney fees and costs of litigation pursuant to *W. Va. Code § 46A-2-115*, and "reasonable damages for emotional distress, annoyance and aggravation, and humiliation." (*Id.* at 21(a)-(c)).

## II. Standard of Review

The court is vested with original jurisdiction of all actions between citizens of different states when the amount in controversy exceeds $ 75,000. *28 U.S.C. § 1332(a)(1)*. The statute establishing diversity jurisdiction is to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941); Healy v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 78 L. Ed. 1248 (1934); Schlumberger Indus., Inc. v. Nat'l Surety Corp., 36 F.3d 1274, 1284 (4th Cir. 1994)*. The party seeking removal bears the burden of establishing federal jurisdiction and, if challenged, also bears the burden of proving that federal jurisdiction was properly invoked. *Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)*.

In a case that is filed initially in federal court, a district court has original jurisdiction if the requisite **[*5]** diversity of citizenship exists unless it "appear[s] to a legal

certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S. Ct. 586, 82 L. Ed. 845 (1938)*. However, the "legal certainty" test applies only in instances in which a plaintiff invokes federal jurisdiction by filing a case in federal court. *Landmark Corp. v. Apogee Coal Co., 945 F.Supp. 932, 935 (S.D. W.Va. 1996)*.

A different test applies "in removal situations . . . in which the plaintiff has made an unspecified demand for damages in state court." *Id.* A defendant who removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount of *$ 75,000. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996); De Aguilar v. Boeing Co., 11 F.3d 55, 58 (5th Cir. 1993)* and *De Aguilar v. Boeing Co., 47 F.3d 1404 (5th Cir. 1995); Gafford v. Gen. Elec. Co., 997 F.2d 150, 158 (6th Cir. 1993); Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992); Sayre v. Potts, 32 F.Supp.2d 881, 885 (S.D. W.Va. 1999);* **[*6]** *Landmark Corp., 945 F.Supp. at 935*. A court must consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied. *Weddington v. Ford Motor Credit Co., 59 F.Supp.2d 578, 584 (S.D.W.Va.1999); Mullins v. Harry's Mobile Homes, Inc., 861 F. Supp. 22, 23 (S.D.W.Va.1994)*.

## III. Discussion

According to the notice of removal, the plaintiff is a resident of West Virginia. (Notice of Removal ¶ 14). Defendant Wells Fargo is a federally chartered national banking association with its principal office in Sioux Falls, South Dakota. (*Id.* P 2). As noted, the parties do not dispute that they are diverse. Rather, the plaintiff seeks remand on the ground that the amount in controversy requirement is not satisfied.

### A. WVCCPA Violations

The total number of WVCCPA violations alleged in this case is critical in determining the amount in controversy inasmuch as the civil penalties make up a major portion of the award available to plaintiff. In her motion to remand, plaintiff enumerates ten WVCCPA claims as follows: three violations for failure to accept her

---

[1]   *See infra* fn. 3.

2009 U.S. Dist. LEXIS 94476, *6

mortgage payments, two violations for attempting to collect the entire loan by foreclosure based on incorrect [*7] amounts owed, and five "additional violations." [2] The parties do not dispute that plaintiff may recover a statutory penalty of up to $ 4,400 for each of the ten alleged WVCCPA violations, for a total of $ 44,000. [3] *See W. Va. Code § 46A-5-101.* Defendant does, however, challenge the number of WVCCPA violations plaintiff claims to have asserted. Defendant contends that the complaint alleges at least thirteen violations. In order to resolve this issue, the court examines the allegations as framed in the complaint. *Sayre v. Potts, 32 F.Supp. 2d 881, 887 (S.D.W.Va. 1999)*("The starting point for ascertaining the amount in controversy . . . is obviously the complaint itself.") The number of civil penalties at issue are found in Counts I, II and III as follows.

Count I of plaintiff's complaint seeks civil penalties [*8] for defendant's "failure to accept receipt of payments and apply same to Plaintiff's loan." Plaintiff alleges that defendant wrongfully refused three separate payments made by plaintiff. Accordingly, Count I alleges three potential violations of the WVCCPA, totaling $ 13,200. [4]

In paragraph 25 of Count II, plaintiff alleges that defendant "made false representations regarding the character, extent, or amount of a claim against Plaintiff[] in violation of *W. Va. Code § 46A-2-127(d)*, through written correspondence and foreclosure proceedings." Through this somewhat vague language, the court can reasonably infer a minimum of two potential WVCCPA violations -- one through defendant's written correspondence and one through defendant's foreclosure proceedings. In addition, paragraph 26 of Count II asserts that defendant charged plaintiff's account interest on payments wrongfully refused by defendant in violation of *W. Va. Code § 46A-2-127(d)*. Inasmuch as defendant allegedly refused payment on three separate occasions, paragraph 26 contains an additional three alleged violations [*9] of the WVCCPA. In all, Count II alleges a minimum of five violations, totaling $ 22,000.

In paragraph 28 of Count III, plaintiff alleges that defendant "made false representations regarding the

character, extent, or amount of a claim against Plaintiff in violation of *W. Va. Code § 46A-2-127(d).*" However, in contrast to Count II, plaintiff does not specify actions by the defendant leading to the alleged violations. Defendant suggests that the actions referenced are presumably the same ones referenced in paragraph 25 of Count II, *i.e.* the written correspondence and foreclosure proceedings. The court is unwilling to make this presumption absent express language. Without further elaboration by plaintiff, paragraph 28 alleges at least one violation of the WVCCPA. Paragraph 29 of Count III alleges defendant charged interest on the wrongfully refused payments in violation of *W. Va. Code § 46A-2-128(d)*. As in Count II, this encompasses three alleged violations based on the three refused payments. In all, Count III alleges a minimum of four violations, totaling $ 17,600.

Accordingly, based on plaintiff's claims in Counts I, II and III, the complaint suggests a minimum of twelve individual WVCCPA [*10] violations. At $ 4,400 per violation, the civil penalty amount at issue solely for the WVCCPA claims totals $ 52,800.

B. Actual Damages for Excess Fees

Plaintiff seeks recovery of $ 9,000 in excess fees she contends were wrongfully charged to her account by the defendant. Both parties agree that the alleged $ 9,000 of actual damages should be included when calculating the amount in controversy.

C. Damages for Emotional Distress, Annoyance, and Humiliation

Additionally, the court notes that plaintiff requested "reasonable damages for emotional distress, annoyance and aggravation, and humiliation" for all three counts listed in the complaint. While these damages were omitted from discussion in plaintiff's motion to remand, they remain in the complaint and thus they remain within the court's calculation of the amount in controversy.

In order to determine a reasonable measure for these damages, the court considers a settlement demand

---

[2]   Plaintiff does not reveal the bases for these five "additional violations" at any point in her motion to remand.

[3]   While plaintiff's complaint states that the violations under the WVCCP each have a maximum penalty of $ 4,000, plaintiff's subsequent motion calculates the amount in controversy using a maximum penalty of $ 4,400, to reach a total of $ 44,000 for the ten violations alleged.

[4]   This corresponds with the three violations for failure to accept payments asserted in plaintiff's motion to remand.

offered by the plaintiff as evidence of the total amount in controversy. For purposes of determining subject matter jurisdiction, courts may consider evidence of any settlement demands made by the plaintiff. *Sayre, 32 F.Supp. 2d at 886*. By letter to the defendant [*11] dated October 31, 2008, plaintiff demanded $ 10,000 "for annoyance and inconvenience, aggravation and humiliation, and payment of her attorney fees." (Pl.'s Mot. Remand, Ex. A). At the time of the settlement demand, plaintiff states that her attorneys' fees were less than $ 2,000. (Pl.'s Mot. Remand at 2). By implication, she demanded at least $ 8,000 to compensate her for emotional distress, annoyance, and humiliation. [5] In accordance with the settlement demand and the repeated requests for relief within the complaint, the court includes $ 8,000 for compensatory damages for alleged emotional distress, annoyance, and humiliation within the amount in controversy. [6]

D. Attorneys' Fees

Finally, attorneys' fees are included in the calculation of the jurisdictional amount for the claims in this case only if they are specifically provided for in the state statute at issue. *See Mo. State Life Ins. Co. v. Jones, 290 U.S. 199, 202, 54 S. Ct. 133, 78 L. Ed. 267 (1933)*. In this case, attorney fees are available under the West Virginia Consumer Credit and Protection Act, and so they should be included in the calculation of the jurisdictional amount in controversy. *W. Va. Code § 46A-5-104*.

As mentioned above, plaintiff informs the court that, at the time of the settlement demand dated October 31, 2008, her attorneys' fees were less than $ 2,000. Eleven months have elapsed since that time. During this time, plaintiff's attorney has prepared and filed a complaint in

state court, prepared and submitted a motion to remand, and begun the expensive process of discovery by filing Rule 26(a)(1) disclosures and plaintiff's first set of interrogatories. Based on the extensive [*13] work required for these filings, the court finds that plaintiff's attorneys' fees could easily have doubled the $ 2,000 of prefiling fees. Furthermore, the possible $ 4,000 of fees accrued up to this point does not account for the potential future costs of conducting extensive discovery, preparing substantive motions and responses, and litigating the case at trial. In the court's view, a distinctly conservative estimate of a plaintiff's attorneys' fees for a case of this nature, including a trial on the merits, would not fall below $ 10,000. [7] Accordingly, at least $ 10,000 for attorneys' fees should be considered in determining the amount in controversy.

E. Summary of Damages

Based upon the foregoing discussion, defendant has demonstrated by a preponderance of the evidence that the jurisdictional minimum is satisfied [*14] inasmuch as a jury could, if plaintiff fully prevails, properly award (1) $ 52,800 in WVCCPA civil penalties; (2) $ 9,000 in actual damages for excess charged; (3) $ 8,000 in compensatory damages for emotional distress, annoyance, and humiliation; and (4) $ 10,000 in attorneys' fees, aggregating $ 79,800. [8]

IV.

For the reasons set forth, it is accordingly ORDERED that plaintiff's motion to remand be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

---

[5]   Defendant suggests using the entire $ 10,000 requested to calculate the amount of damages for emotional distress, annoyance, and humiliation, but using the full amount fails to acknowledge the contribution of attorneys' fees.

[6]   As defendant aptly points out, "[p]arties routinely offer and accept settlement amounts significantly below the total amount placed into controversy by the case in order to avoid the risks that accompany a trial." *Sayre, 32 F.Supp. 2d at 888*. As the court ultimately finds the amount in controversy requirement [*12] to be met in spite of using the conservative $ 8,000 figure provided by plaintiff, it would be of no consequence to analyze the full recovery possible for plaintiff's claims of emotional distress, annoyance, and humiliation.

[7]   It is noted that in two rather recent cases involving WVCCPA violations, the court held that plaintiffs' attorneys fees could reasonably reach up to $ 25,000. *See Patton v. Fifth Third Bank, No. Civ. A. 2:05-0790, 2006 U.S. Dist. LEXIS 23138, 2006 WL 771924, at *3 (S.D. W.Va. Mar. 24, 2006). McGraw v. Discover Fin. Servs., Inc., No. Civ.A. 2:05-0215, 2005 U.S. Dist. LEXIS 37111, 2005 WL 1785259, at *6 (S.D. W.Va. July 26, 2005)*.

[8]   Defendant also contends that federal subject matter jurisdiction exists because plaintiff's claims regarding interest on the refused mortgage payments fall within the complete preemptive scope of the National Bank Act. The court declines to address this contention as it finds subject matter jurisdiction exists on the basis of diversity.

**A** Neutral

As of: May 19, 2015 9:17 AM EDT

# *Miller v. Bank of Am.*

United States District Court for the Northern District of West Virginia

June 13, 2011, Decided; June 13, 2011, Filed

Civil Action No. 1:10CV213

**Reporter**

2011 U.S. Dist. LEXIS 62991; 2011 WL 2429350

CLARENCE MILLER and ROSALIE MILLER, Plaintiffs, v. BANK OF AMERICA, a Delaware corporation and BAC HOME LOANS SERVICING, LP, a qualified Texas limited partnership, Defendants.

**Prior History:** *Miller v. Bank of Am., 2011 U.S. Dist. LEXIS 40340 (N.D. W. Va., Apr. 13, 2011)*

## Core Terms

plaintiffs', amount in controversy, removal, damages, federal court, coverage, hazard

**Counsel:** [*1] For Clarence Miller, Rosalie Miller, Plaintiffs: Michael L. Solomon, LEAD ATTORNEY, Solomon & Solomon, Morgantown, WV.

For Bank of America, a Delaware Corporation, BAC Home Loans Servicing, LP, A qualified Texas Limited Partnership, Defendants: Jason E. Manning, John C. Lynch, LEAD ATTORNEYS, TROUTMAN SANDERS LLP, Virginia Beach, VA.

**Judges:** FREDERICK P. STAMP, JR., UNITED STATES DISTRICT JUDGE.

**Opinion by:** FREDERICK P. STAMP, JR.

## Opinion

### MEMORANDUM OPINION AND ORDER DENYING THE PLAINTIFFS' MOTION TO REMAND

#### I. Procedural History

The plaintiffs filed this civil action in the Circuit Court of Monongalia County, West Virginia, alleging breach of contract, negligence, and breach of fiduciary duty. The defendants removed this action to this Court, asserting that federal jurisdiction is pursuant to *28 U.S.C. § 1332.*

This Court granted the plaintiffs' motion to file an amended complaint, which added a declaratory judgment count to determine the correct payoff they owe to the defendants on their loan account. The plaintiffs also deleted one of their claims for damages. After the filing of the amended complaint, the plaintiffs filed a motion to remand, arguing that the amended complaint deleted the plaintiffs' only damage claim [*2] that could possibly result in a recovery in excess of $75,000.00. The defendants filed a response in opposition, to which the plaintiffs replied. For the reasons set forth below, this Court must deny the plaintiffs' motion to remand.

#### II. Facts

The plaintiffs' home was destroyed by fire. The plaintiffs allege that they paid the defendants monthly escrows for hazard insurance, but that the defendants failed to maintain hazard insurance. The plaintiffs state that as a result of the breach, they sustained the loss of use of their property, annoyance and inconvenience, emotional distress, and mental anguish. They also state that they sustained the loss of benefits to which they would have been entitled under their hazard insurance policy, which was cancelled because of the breach.

After the plaintiffs filed the original complaint, the plaintiffs' homeowner insurance carrier did agree to reinstate the plaintiffs' insurance coverage so that their fire loss would be covered. The plaintiffs assert that the only remaining damage claim is the loss sustained by them because of the delay of four weeks between the date of the fire and the date the insurance company agreed to honor the plaintiffs' claim.

#### III. [*3] Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. *28 U.S.C.*

2011 U.S. Dist. LEXIS 62991, *4

§ 1441. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing federal jurisdiction. See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. Id.

Although courts strictly construe the statute granting removal jurisdiction, Doe v. Allied Signal, Inc., 95 F.2d 908, 911 (7th Cir. 1993), the court is not required "to leave common sense behind" when determining the amount in controversy, Mullins v. Harry's Mobile Homes, 861 F. Supp. 22, 24 (S.D. W. Va. 1994). When the amount in controversy is not apparent on the face of the plaintiff's complaint, the federal [*4] court must attempt to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record. 14C Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 3725 at 73 (3d ed. 1998). However, the court is limited to examining only evidence that was available at the moment the petition for removal was filed. Chase v. Shop 'N Save Warehouse Foods, 110 F.3d 424, 428 (7th Cir. 1997).

District courts "generally determine the amount in controversy by reference to the plaintiff's complaint." JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010). If the plaintiffs, in their complaint, "in good faith allege[] a sufficient amount in controversy, '[e]vents occurring subsequent' to the filing of the complaint 'which reduce the amount recoverable below the statutory limit do not oust jurisdiction.'" Id. (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S. Ct. 586, 82 L. Ed. 845 (1938)).

IV. Discussion

In their motion to remand and in their reply, the plaintiffs cite to no law to support their motion to remand. In their reply, [*5] they argue that their motion "is not simply a post removal stipulation regarding the amount of their

damages." Instead, the plaintiffs contend that their motion "is based upon a genuine, and substantial, change in the amount of their damages based upon their insurance company's post removal payment of fire loss benefits to them."

As mentioned above, the existence of diversity jurisdiction is determined "at the time the action is filed, regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy." Porsche Cars N. Am, Inc. v. Porsche.net, 302 F.3d 248, 255-56 (4th Cir. 2002) (quoting Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428, 111 S. Ct. 858, 112 L. Ed. 2d 951 (1991)) (internal citations omitted). Thus, "the conditions that create diversity jurisdiction . . . need not survive through the life of the litigation." Id. at 255.

After carefully reviewing the complaint and the parties' memoranda, this Court concludes that the defendants have satisfied their burden of proof that at the time of the filing of the complaint the plaintiffs' damages may have exceeded $75,000.00. This Court has consistently applied the "preponderance of evidence" standard to [*6] determine whether a defendant has met its burden of proving the amount in controversy. When no specific amount of damages is set forth in the complaint, the defendant bears the burden of proving that the claim meets the requisite jurisdictional amount. Mullins, 861 F. Supp. at 23. In such circumstances, the Court may consider the entire record before it and may conduct its own independent inquiry to determine whether the amount in controversy satisfies the jurisdictional minimum. Id.

In this case, at the time the plaintiffs filed their original complaint in the Circuit Court of Monongalia County, West Virginia, the plaintiffs' homeowner's insurance carrier had not yet reinstated the plaintiffs' insurance coverage so that their fire loss would be covered. In their notice of removal, the defendants show that there were two hazard insurance policies which may have been in effect, with policy limits of $130,273.00 and $89,000.00 [1] as Coverage A, the Dwelling Amount. The defendants also point to the 2010 tax assessment of the property, which showed that the building alone was worth $88,000.00. The plaintiffs also seek damages for annoyance and inconvenience as well as damages for emotional [*7] distress and mental anguish. Accordingly, this Court must deny the plaintiffs' motion to remand.

---

[1]   The defendants state that the hazard insurance policy with Coverage A limit of $89,000.00 indicates that it is "not total loss coverage."

2011 U.S. Dist. LEXIS 62991, *7

V. Conclusion

For the reasons stated above, the plaintiffs' motion to remand is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: June 13, 2011

/s/ Frederick P. Stamp, Jr.

FREDERICK P. STAMP, JR.

UNITED STATES DISTRICT JUDGE

No *Shepard's* Signal™
As of: May 19, 2015 9:17 AM EDT

# *Perilli v. Nationwide Mut. Ins. Co.*

United States District Court for the Northern District of West Virginia

June 17, 2011, Decided; June 17, 2011, Filed

Civil Action No. 5:10CV56

**Reporter**
2011 U.S. Dist. LEXIS 64779; 2011 WL 2462247

SILVIO PERILLI and RHODA PERILLI, Plaintiffs, v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.

## Core Terms

amount in controversy, removal, plaintiffs', jurisdictional, exceeds, damages, costs, federal jurisdiction, settlement, punitive damages, burden of proof, settle

**Counsel:** **[*1]** For Silvio Perilli, Rhoda Perilli, Plaintiffs: Jacob M. Robinson, Sr, LEAD ATTORNEY, Robinson Law Offices, Wheeling, WV.

For Nationwide Mutual Insurance Company, Defendant: Jared M. Tully, LEAD ATTORNEY, Frost Brown & Todd, LLC, Charleston, WV; William M. Harter, LEAD ATTORNEY, Frost Brown Todd, LLC, Columbus, OH.

**Judges:** FREDERICK P. STAMP, JR., UNITED STATES DISTRICT JUDGE.

**Opinion by:** FREDERICK P. STAMP, JR.

## Opinion

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

#### I. Procedural History

The plaintiffs commenced this civil action in the Circuit Court of Ohio County, West Virginia to recover damages as a result of the defendant's alleged improper handling of their underlying uninsured motorist ("UM") claim. The accident giving rise to the plaintiffs' underlying UM claim occurred on February 4, 2006 in Wheeling, West Virginia when, allegedly, Leslie M. Chuderwiez negligently collided with the plaintiffs' vehicle, causing serious permanent injuries. After settling the underlying claim,

the plaintiffs brought this first-party bad faith suit against their automobile insurer, Nationwide Mutual Insurance Company ("Nationwide"), alleging that Nationwide improperly handled the UM claim, which forced the plaintiffs **[*2]** to file the underlying suit. The complaint includes the following causes of action: (1) common law claim misconduct; (2) violations of the West Virginia Unfair Trade Practices Act ("WVUTPA"); (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) violation of fiduciary duty. The complaint further alleges that the plaintiffs are entitled to punitive damages and that they substantially prevailed in the underlying suit.

On May 21, 2010, the defendant removed the case to this Court pursuant to *28 U.S.C. § 1332*, asserting that complete diversity of citizenship exists and that the potential judgment, if the plaintiffs were to prevail on the merits of the case, exceeds $75,000.00, exclusive of interest and costs. Since the time of removal, the parties have conducted significant discovery and, more recently, filed and briefed numerous motions, including a motion for summary judgment, a motion in limine, and a motion to bifurcate the punitive damages portion of the trial. On June 13, 2011, over a year after this case was removed, fifteen days before trial was scheduled to begin, and the day of the pretrial conference, the plaintiffs filed a motion **[*3]** to remand asserting, for the first time, that the defendants have failed to establish that the amount in controversy exceeds the jurisdictional amount. At the pretrial conference held on June 13, 2011, this Court set a consolidated briefing schedule for the motion to remand. The plaintiffs' motion to remand is now fully briefed and is pending before this Court. For the reasons set forth below, the plaintiffs' motion to remand is granted.

#### II. Facts

Shortly after the February 4, 2006 accident, Nationwide became aware of the plaintiffs' claims against Ms.

Chuderwiez and inspected and appraised the property damage to the plaintiffs' vehicle. After confirming the liability of Ms. Chuderwiez, Nationwide contacted the purported liability insurer, GEICO. On February 23, 2006, Nationwide learned that Ms. Chuderwiez was not insured by GEICO at the time of the accident. Therefore, Nationwide opened a UM claim. Over the next several months, Nationwide sent multiple requests for medical information to plaintiffs' counsel, but received no response until February 5, 2007. Nationwide and the plaintiffs exchanged settlement offers up until the time when the plaintiffs filed the underlying suit. When [*4] the parties met for mediation, the plaintiffs provided additional medical bills and records related to the accident. Based upon this new information, the parties agree to settle the underlying suit for $50,000.00.

Prior to the eventual settlement, and despite liability being clear, the plaintiffs allege that Nationwide wrongfully denied them their UM vehicle insurance policy benefits. Specifically, the plaintiffs contend that Nationwide repeatedly denied their numerous demands to settle their claim for the UM vehicle insurance policy benefits. According to the plaintiffs, because Nationwide refused to timely settle the UM claim, they were required to hire an attorney to file the underlying lawsuit. The plaintiffs further argue that Nationwide was in possession of evidence proving that the value of the UM claim exceeded its settlement offers, yet Nationwide failed to negotiate in good faith and delayed in honoring the claim and settling the case.

III. Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. _28 U.S.C. § 1441_. Federal courts have original jurisdiction over [*5] primarily two types of cases: (1) those involving federal questions under _28 U.S.C. § 1331_, and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to _28 U.S.C. § 1332(a)_. As has been often stated, the party seeking removal bears the burden of establishing federal jurisdiction. See _Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994)_. Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. _Id._

Importantly, a motion to remand based upon lack of subject matter jurisdiction may be raised "at any time

before final judgment." _28 U.S.C. § 1447(c)_; _Fed. R. Civ. P. 12(h)(3)_; see _State v. Ivory, 906 F.2d 999, 1000 n.1 (4th Cir. 1990)_. Indeed, defects in subject matter jurisdiction can even be raised for the first time on appeal. See _Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18, 71 S. Ct. 534, 95 L. Ed. 702 (1951)_. However, the court is limited to a consideration of facts on the record at the time of removal. See _Lowery v. Alabama Power Co., 483 F.3d 1184, 1213-15 (11th Cir. 2007)_ (stating that in assessing whether removal was proper, the district [*6] court has before it only the limited universe of evidence available when the motion to remand is filed).

IV. Discussion

In their motion to remand, the plaintiffs contend that federal jurisdiction is lacking because the defendants have failed to establish that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The plaintiffs highlight the fact that the ad damnum clause of their complaint demanded judgment against the defendants in excess of the minimum jurisdictional limit of the Circuit Court of Ohio County, West Virginia, which is far less than $75,000.00. The plaintiffs also note that prior to the filing of the complaint, they did not make a demand for an amount equal to or in excess of $75,000.00. Moreover, at the time of removal, the defendant had made no settlement offers, let alone an offer in excess of the amount in controversy requirement. The plaintiffs contend that the defendant has relied upon speculation rather than facts, and thus it has not met its burden of proof with regard to the amount in controversy.

In response, the defendant argues that it has met its burden of proving that the amount in controversy exceeds the jurisdictional amount. In [*7] support of its position, the defendant states that because the plaintiffs failed to allege a specific amount of damages, the court may consider the complaint, as well as the removal notice and other relevant materials in the file when conducting its inquiry as to whether the amount in controversy is satisfied. If this Court considers the potential recovery of attorney's fees and punitive damages in conjunction with the amount of the underlying settlement, the defendant argues that the

Case 1:15-cv-00086-JPB   Document 1-4   Filed 05/19/15   Page 37 of 40   PageID #: 67

Page 3 of 4
2011 U.S. Dist. LEXIS 64779, *7

amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs.[1]

The burden of establishing that the amount in controversy exceeds $75,000.00, exclusive of interests and costs, rests with the party seeking removal. _Mulcahey, 29 F.3d at 151_. This Court has consistently applied the "preponderance of evidence" standard to determine whether a defendant has [*8] met its burden of proving the amount in controversy. When no specific amount of damages is set forth in the complaint, the defendant bears the burden of proving that the claim meets the requisite jurisdictional amount. _Mullins v. Harry's Mobile Homes, Inc., 861 F. Supp. 22, 23 (S.D. W. Va. 1994)_. In such circumstances, the court may consider the entire record before it and may conduct its own independent inquiry to determine whether the amount in controversy satisfies the jurisdictional minimum. _Id._

After careful consideration of the record in this case, this Court must find that the defendant has not met its burden of proof with regard to the amount in controversy. "The defendant's removal cannot be based on speculation; rather, it must be based on facts as they exist at the time of removal." _Marshall v. Kimble, No. 5:10CV127, 2011 U.S. Dist. LEXIS 1422, 2011 WL 43034, at *3 (N.D. W. Va. Jan. 6, 2011)_ (citing _Varela v. Wal-Mart Stores, East, Inc., 86 F. Supp. 2d 1109, 1110-11 (D.N.M. 2000)_). In this case, the defendant's contention that the plaintiffs could possibly recover an award in excess of $75,000.00 is speculation. Even if this Court uses the $50,000.00 underlying settlement as a "guidepost" for bad faith [*9] damages, as the defendant suggests, it does not follow that a damage judgment in this case will be in excess of $75,000.00. As this Court has previously stated in other cases, "the mere likelihood of punitive damages, without more, does not give rise to federal jurisdiction." _Fahnestock v. Cunningham, No. 5:10CV89, 2011 U.S. Dist. LEXIS 51241, 2011 WL 1831596, at *2 (N.D. W. Va.)_ (citing _Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 938 (S.D. W. Va. 1996)_).

Here, the defendant has offered no competent proof or tangible evidence that the amount in controversy exceeds $75,000.00, exclusive of interests and costs. The notice of removal does not include any documents, affidavits or evidence in support of the defendant's damages calculations. Considering all of the evidence, this Court finds that the defendant has not shown by a preponderance of the evidence that the plaintiffs will recover damages in excess of the jurisdictional minimum.

Given the thirteen-month delay in moving for remand, it is perhaps understandable that the defendant characterizes the motion to remand as "a thinly veiled effort to avoid the June 28 trial date in this action." (Def.'s Resp. to Mot. to Remand 9.) This delay does not waive the [*10] plaintiffs' challenge to federal jurisdiction, even though it is inconvenient for both the parties and this Court given the late stage of these proceedings and the quickly approaching trial date. This Court agrees with the sentiments of the Honorable Richard Allen Posner, who discussed a similar delayed jurisdictional challenge in a Seventh Circuit Court of Appeals case:

> It may have been reprehensible of [the plaintiffs] to delay as long as they did to raise a jurisdictional objection, and it may even (though this we need not decide either) have been a sanctionable tactic, but assuming federal jurisdiction where none exists is not a permissible sanction for anything. Napoleon at his coronation took the imperial crown out of the hands of the Pope and crowned himself. Federal judges do not have a similar prerogative. A court that does not have jurisdiction cannot assume it, however worthy the cause.

_In re Brand Name Prescription Drugs Antitrust Litig., 248 F.3d 668, 670 (7th Cir. 2001)_.

V. Conclusion

For the reasons stated above, the plaintiffs' motion to remand is GRANTED. Accordingly, it is ORDERED that this case be REMANDED to the Circuit Court of Ohio County, West Virginia. The defendant's [*11] motion for summary judgment (Doc. 28), motion in limine (Doc. 32), and motion to bifurcate punitive damages portion of trial (Doc. 37) are DENIED WITHOUT PREJUDICE to being brought before the state court. It is further ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

---

[1]   The defendant reaches this conclusion by adding the principal amount of the underlying attorney's fees claims ($22,500.00), the litigation costs and interest from the date of the underlying accident ($12,500.00), and the estimated amount of a jury award for compensatory damages, which the defendant argues could exceed $40,000.00.

2011 U.S. Dist. LEXIS 64779, *11

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of the Circuit Court of Ohio County, West Virginia. Pursuant to *Federal Rule of Civil Procedure 58*, the Clerk is DIRECTED to enter judgment on this matter.

DATED: June 17, 2011

/s/ Frederick P. Stamp, Jr.

FREDERICK P. STAMP, JR.

UNITED STATES DISTRICT JUDGE

⚠ Caution

As of: May 19, 2015 9:26 AM EDT

## *Winnell v. HSBC Mortg. Servs.*

United States District Court for the Southern District of West Virginia, Charleston Division

October 28, 2011, Decided; October 28, 2011, Filed

CIVIL ACTION NO. 2:11-cv-00561

**Reporter**

2011 U.S. Dist. LEXIS 125024; 2011 WL 5118805

THAYER EDSEN WINNELL, Plaintiff, v. HSBC MORTGAGE SERVICES, INC., Defendant.

## Core Terms

amount in controversy, removal, Services, exceeds, Mortgage, measured, injunctive relief, district court, foreclosure, diversity, party's, jurisdictional requirement, object of the litigation, federal jurisdiction, outstanding balance, well established, current balance, federal court, court finds, jurisdictional, declaratory, injunction, initiated, argues

**Counsel:** [*1] For Thayer Edsen Winnell, individually, and on behalf of a class of similarly situated persons, Plaintiff: John W. Barrett, Jonathan R. Marshall, LEAD ATTORNEYS, BAILEY & GLASSER, Charleston, WV.

For HSBC Mortgage Services, Inc., Defendant: H. F. Salsbery, Jared M. Tully, LEAD ATTORNEYS, FROST BROWN TODD, Charleston, WV; Melanie Margolin, LEAD ATTORNEY, PRO HAC VICE, FROST BROWN TODD, Indianapolis, IN.

**Judges:** JOSEPH R. GOODWIN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JOSEPH R. GOODWIN

## Opinion

### MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiff's Motion to Remand [Docket 14]. For the reasons stated below, the court **FINDS** that removal was proper and **DENIES** the Motion to Remand.

### I. Factual and Procedural Background

On or about July 7, 2011, the plaintiff, Thayer Edsen Winnell, filed this action in the Circuit Court of Jackson County, West Virginia. In the Complaint, Winnell alleges that he obtained a $90,000 mortgage loan from Household Bank and that the defendant, HSBC Mortgage Services, Inc. ("HSBC") began servicing the loan after it was originated. Winnell claims that HSBC has engaged in abusive lending practices in violation of West Virginia law. The Complaint states that Winnell brings this action [*2] on behalf of himself and all other similarly situated individuals pursuant to Rule 23 of the West Virginia Rules of Civil Procedure. (Compl. at ¶ 17 [Docket 1-1].)

The complaint was served on HSBC on July 18, 2011. (Notice of Removal at ¶ 3 [Docket 1].) On August 17, 2011, HSBC removed this case to federal court pursuant to *28 U.S.C §§ 1332(a)*, *1441*, and *1446*. The defendant has asserted that this court has diversity jurisdiction over the named plaintiff, Winnell, and supplemental jurisdiction over all members of the class. All proposed class members, including Winnell, are West Virginia citizens. HSBC is a Delaware corporation with its principal place of business in Florida. Winnell has not contested that complete diversity exists. He argues, however, that HSBC has not shown that the amount in controversy exceeds the jurisdictional requirement of $75,000.

### II. Discussion

A defendant may remove a case to federal court if the action is one which could have originally been brought in the district court. *28 U.S.C. § 1441(a)*. Removal jurisdiction implicates significant federalism concerns and therefore is to be strictly construed. *Md. Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255, 260 (4th Cir. 2005)*. [*3] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *28 U.S.C. § 1447(c)*. "If federal jurisdiction is doubtful, a remand is

2011 U.S. Dist. LEXIS 125024, *4

necessary." *Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); see also Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005).*

A district court has original jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. *28 U.S.C. § 1332(a).* A court addressing the propriety of federal jurisdiction in a removal action will base its "decision on the record existing at the time the petition for removal was filed." *Sayre v. Potts, 32 F.Supp.2d 881, 886 (S.D. W. Va. 1999)* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 291, 58 S. Ct. 586, 82 L. Ed. 845 (1938)).*

"In a removal action, the defendant bears the burden of proving, by a preponderance of the evidence, that the plaintiff's claims exceed the jurisdictional amount." *Moses Auto., Inc. v. American Honda, 581 F.Supp.2d 763, 767 (S.D. W. Va. 2007).* "The amount in controversy can be measured by either party's loss." *Id.* (citing *Government Employees Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964)).* [*4] "In actions seeking declaratory of injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).*

In this case, the plaintiff has requested an "An injunction prohibiting the Defendant from initiating foreclosure proceedings on any accounts in West Virginia where the loans were serviced in the manner described above," which includes the named plaintiff's own loan. (Compl. at 6 [Docket 1-1]). The current balance of Winnell's loan is alleged to be $85,359.95, which exceeds jurisdictional minimum of $75,000. (Def. HSBC Mortgage Services Inc.'s Resp. in Opp'n. To Pls. Mot. to Remand, at 5 [Docket 18]). Winnell argues, however, that because HSBC has not yet initiated foreclosure on his home, the current balance of the loan is irrelevant to the amount in controversy.

"In actions seeking declaratory of injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).* "The amount in controversy can be measured by either [*5] party's loss." *Id.* (citing *Government Employees Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964)).* In this case, Winnell's personal liability on the loan is alleged to have been discharged in bankruptcy. (Def. HSBC Mortgage Services Inc.'s Resp. in Opp'n to Pls. Mot. to Remand, at 5 [Docket 18]). Thus, foreclosure is HSBC's sole recourse to enforce the loan. If HSBC is unable to enforce the loan, it stands to lose at least the outstanding balance of the loan. The value of the requested injunction, therefore, is the outstanding balance of the loan—$85,359.95.

Because the value of the requested injunctive relief alone exceeds the jurisdictional requirement of $75,000, this court need not consider the value of the statutory penalties sought by the plaintiffs. The parties are diverse and the amount in controversy exceeds $75,000. Accordingly, the court **FINDS** that it has jurisdiction under *28 U.S.C. § 1332(a)* and **DENIES** the plaintiffs' Motion to Remand.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: 28 Oct 2011

/s/ Joseph R. Goodwin

JOSEPH R. GOODWIN

UNITED STATES DISTRICT JUDGE